[Civ. No. 20143.   First Dist., Div. Three.   Oct. 23, 1962.]

REYNOLDS J. BARBIERI et al., Plaintiffs and Respondents,
v. ERNEST ONGARO et al., Defendants and Appellants.

McFarland & Ferdon for Defendants and Appellants.

Howard K. Morehouse for Plaintiffs and Respondents

DRAPER, P. J.—Defendants appeal from decree enjoining certain uses of their land. The question is whether restrictive covenants between plaintiffs and a predecessor in interest of defendants are enforceable against defendants.

Plaintiffs owned a tract of land in Marin County. They conveyed a portion to Gragg, another to Wylie, and retained for themselves the third portion, on which they have built a summer home. Plaintiffs' deeds to Gragg and Wylie contained restrictions not detailed in this record, but which had become the subject of dispute among the three property owners. In 1953 plaintiffs, Gragg and Wylie executed an agreement designed to resolve the disputes. By this agreement plaintiffs were to quitclaim to Gragg and Wylie all interest in their lands; plaintiffs were to convey the lands remaining in their ownership to a title company, which would then reconvey to plaintiffs subject to specified restrictions; Gragg and Wylie were to convey their respective properties to plaintiffs, who in turn would reconvey subject to similar specified restrictions. It was specifically agreed that these new restrictions "are to be effective as to all the above described lands" of

the parties; that "the above covenants shall be deemed, and taken to be, covenants running with the land for the common benefit" of the parties; "their heirs and assigns"; that upon any attempted violation of any covenant of the agreement or the deeds by "any of the several parties hereto, their heirs, successors or assigns, or anyone in possession" of any of the properties, any party may seek injunctive relief, and that in such litigation "this Agreement shall be considered . . . as conclusively setting forth the rights of the parties hereto, their successors and assigns." The several deeds required by this agreement were executed and, early in 1954, the agreement and the deeds were recorded. Each deed provided that it should be "subject to the following conditions and restrictions," and then set forth the restrictions specified in the agreement. No deed, however, either specifically referred to the agreement or expressly designated a dominant tenement.

Gragg then conveyed about half his land to another. In 1956, he conveyed to defendants Lang the remaining portion of the property Gragg had acquired from plaintiffs, together with some tideland property Gragg had separately acquired. Lang developed a plan for subdividing the whole of the land so acquired into five residential lots. Pursuant to that plan, he conveyed to defendants Ongaro, in 1957, about half the land he had acquired from Gragg. Excavation began on both the Ongaro and Lang properties for construction of a residence on each. This action for injunction was then commenced.

It is apparent that the result of these several transactions was to divide into three parcels the land originally sold by plaintiffs to Gragg. The principal issue is whether such division is prohibited by a covenant between plaintiffs and Gragg which is enforceable against defendants Lang and Ongaro.

Both the agreement and the plaintiffs-Gragg deed provide that the land conveyed to Gragg "shall not be subdivided into less than two (2) lots of approximately equal size," and that not more than one dwelling place shall be constructed on each of the resulting lots.

The trial court held the quoted clause to be a scrivener's error, and that the true intention of the parties was to restrict subdivision to "not more than" two lots. Defendants-appellants assert that the findings and conclusion on this issue are unsupported. We cannot agree. The questioned provision is denominated a "restriction" in both agreement and deed. Certainly it is the reverse of a restriction if taken literally to prohibit subdivision into "not less than two lots." The pur-

pose of a "restriction" on subdivision of residential land obviously is to limit the number of lots to result. Defendants' construction would bring a result precisely contrary. It would require subdivision and would place no limit on the extent thereof. Defendants argue that the provision as they construe it would nonetheless have some effect because of the requirement that the resulting lots be of equal size. We fail to see how they find solace in such a view. After half the Gragg property was sold, Lang purchased the remaining half and sold half of that to Ongaro, thus dividing the property sold by plaintiff to Gragg into parcels of one half, one quarter and one quarter, a clear violation of the restriction even as defendants see it. The trial court's findings and conclusion as to the true intent of the parties also are borne out by reference to the restrictions imposed upon the Barbieri (plaintiff) and Wylie portions of the original Barbieri property. As to each of these parcels, the restriction was that the parcel conveyed "not be subdivided into lots of less than" a specified size which was approximately half the total area conveyed. It is clear that the language of the Gragg restriction was but a typographical error, was apparent to anyone reading it, and was properly corrected by the trial court.

It is contended, however, that this restriction, whatever its effect as to Gragg, the original grantee of plaintiffs, is not enforceable against defendants, who were not parties to the original transaction but are claimed to be bound only because their interest is derived from Gragg by mesne conveyances. The evidence was uncontradicted, and the trial court found, that defendants had actual knowledge of the restrictions in the Barbieri-Gragg deed before they purchased. ▮ Defendants seek to avoid the effect of this finding by pointing out that the restriction in the deed to Gragg is not "expressed to be for the benefit of the land of the covenantee" (plaintiffs) and thus cannot be a covenant running with the land (Civil Code § 1468). In this defendants are correct.

They concede, however, that this defect is remedied if the three-party agreement of 1953 may be looked to. ▮ They argue that this agreement is ineffective because merely illusory—a document in the nature of an agreement to agree. This argument is based on a clause of the agreement providing that "all conveyances herein provided for shall be accomplished at or about the same time" through a named title company, are to be "recorded so as to accomplish the purposes hereof, and unless all of the terms and conditions hereof are accomplished,

this Agreement shall become void and of no effect and none of the parties hereto shall be entitled to any of the benefits hereof.'' We do not agree with defendants' construction of this clause. Its purpose clearly is neither to negate the agreement nor to relegate its effectiveness wholly to the deeds to be executed pursuant to it. On the contrary, it seems apparent that the parties intended to assure that no deeds would be delivered or recorded until all were deposited with the title company, and that no party could have the benefit of the others' deeds while withholding deposit of his own. This clause would also serve to relieve all parties of the restrictions if any were unenforceable, but it does not render the agreement meaningless.

The agreement on its face specifies that restrictions are ''hereby imposed,'' and that the covenants contained in it shall be deemed covenants running with the land. It also provides for enforcement by injunction of ''the covenants herein contained or set forth in the conveyances herein provided for.'' We are satisfied that the acknowledged agreement is an ''instrument . . . affecting the title to . . . real property,'' is properly within the statute (Gov. Code § 27280) authorizing recording (*Wayt* v. *Patee,* 205 Cal. 46, 53 [269 P. 660]), and thus placed defendants upon constructive notice of its terms (*id.,* p. 54).

Thus an equitable servitude, enforceable by injunction against defendants, is established. In this view, it becomes unnecessary for us to consider whether the restrictions are true covenants running with the land, enforceable by those deriving title from the original grantor against those claiming under the original grantee. Plaintiffs here are the original grantors, and retain the land designed to be benefitted by the restrictions. Defendants derive their title from plaintiffs' grantee, Gragg, and defendants took with actual notice of the restrictions contained in the deed from plaintiffs to Gragg. This actual knowledge, and the clear fact that use by defendants inconsistent with the restrictions would be injurious to plaintiffs' land, bring into play the doctrine of equitable servitude. Even though a covenant is not one running with the land, it does, under these circumstances, warrant injunction against a subsequent grantee who takes with actual knowledge (*Guaranty Realty Co.* v. *Recreation Gun Club,* 12 Cal.App. 383 [107 P. 625] ; see also *Marra* v. *Aetna Construction Co.,* 15 Cal.2d 375, 378 [101 P.2d 490]). Here, in addition to the actual knowledge by defendants of the deed restrictions, there

is constructive knowledge of the recorded agreement which makes clear that the restrictions are for the mutual benefit of the several parcels of land. It would be inequitable to permit defendants to breach these restrictive covenants as against the original grantor who still retains his adjoining land. Injunction to enforce this equitable servitude was properly granted.

Defendants attack the provision of the injunction which restrains them from constructing or maintaining a roadway over the lands conveyed by Lang to Ongaro. In his conveyance to Ongaro, Lang reserved an easement for road purposes designed to serve four tideland lots, located wholly outside the properties involved in the Barbieri-Gragg-Wylie agreement. The injunction runs only to construction and maintenance of a road to serve these properties, and does not affect access to the Ongaro property itself. Defendants contend that such a roadway is not violative of the restriction limiting use of the Ongaro-Lang properties to residential use. But there is evidence indicating an intention of Lang to construct a yacht harbor immediately adjoining the four tideland lots. As pointed out, these lots are outside the area limited and to be benefitted by the restrictions here involved. The trial judge viewed the premises, and is in a better position than we to determine the effect of the roadway upon the residential use of plaintiffs' premises and the other lands designed to be benefitted by the restrictions. We accept the conclusion of the trial court that the proposed roadway for access to properties outside those subject to the present restrictions was not a residential use within the meaning of the three party agreement. No street construction by a public body is in issue here. Thus the decision relied upon by defendants (*Friesen* v. *City of Glendale,* 209 Cal. 524 [288 P. 1080]) is not in point.

The deed from Gragg to Lang included tideland properties not acquired from plaintiffs and not subject to the restrictions here discussed. Through inadvertence, the injunction ordered by the trial court purports to limit use of these tideland lots. In their briefs, the parties agree that the injunction should not run to such lands.

The judgment is modified by deleting from its injunctive provisions all lands not acquired from plaintiffs, and the trial court is directed to effect such modification. As so modified, the judgment is affirmed, with costs to respondents.

Salsman, J., and Devine, J., concurred.