EISENSTADT, Trustee For Edgewood Hill
Associates *v.* BARRON, et al.

[Nos. 28 and 223, September Term, 1968.]

*Decided February 10, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, SINGLEY and SMITH, JJ.

*R. Noel Spence,* with whom were *Kaylor, Spence & Hovermale* on the brief, for appellant.

*William J. Dwyer* for appellees.

SMITH, J., delivered the opinion of the Court.

Appellant (Eisenstadt) acquired land from one of the appellees (Barron) near Hagerstown. The deed recited that the land was "conveyed subject to the conditions, restrictions, reservations, easements, rights-of-way, and streets as shown on the aforesaid Plat, and subject also to the further condition that the lot conveyed herein shall have not more than one water connection to the water main in the bed of Redwood Circle, and that said water connection shall not be greater than one inch in diameter, and that said connecting water line shall be used

solely for supplying water for the domestic use for the dwelling now thereon or to be constructed thereon."

The plat to which reference was made was of record among the land records of Washington County. It had typed thereon the following legend:

"RESTRICTIONS AND CONDITIONS—

"The following conditions and restrictions shall apply to and bind each lot shown hereon.

"1—The lots shown on this plat shall be used for residential purposes only, and no structure shall be erected * * * thereon except a single dwelling. * * *

* * *

"5—No sheds * * * or other buildings, other than a private garage, shall be erected or maintained on any lot shown on this plat.

* * *

"8—Enforcement shall be by proceedings at law or in equity against any persons or person violating or attempting to violate any of the aforegoing conditions and restrictions either to restrain violation, or to recover damages."

The deed to Barron in addition to the restrictions mentioned above in the deed from Barron to Eisenstadt contained the following language:

"Whereas, the Estate of George H. Day on behalf of itself as well as the successors in title to the aforesaid lands, or portions thereof, desire the protection and assurance that there will be sufficient water pressure and water supply to the lots herein conveyed as well as to those lots which may later be developed; and

"Whereas, the parties hereto covenant and agree, for themselves, their heirs, assigns, and successors in title that each of the lots conveyed shall not have more than one water connection to said water main in the bed of Redwood Circle, and that said water connec-

tions shall not be greater than one inch in diameter and that said connecting water line shall be used solely for supplying water for the domestic use for the dwelling now thereon or to be constructed thereon * * *."

The deed to Barron was dated June 6, 1966. The deed to Eisenstadt was dated July 20, 1967.

Eisenstadt proceeded to construct an access driveway through his lot to his apartment development located beyond the confines of the platted area. He also installed an eight inch water line from Redwood Circle to his apartment development across his lot.

Barron and the other appellees brought suit to enjoin use of the lot for other than residential purposes and to enjoin construction of the water line. Although the suit was brought before the water line was installed, the water line was completed before trial.

The chancellor said:

"The defendant has been quite set in his determination to violate the restrictions both before and after he accepted the deed. He obviously never intended to abide by the restrictions. In this regard he was practicing a deceit against the grantors. A Court of equity will not lend its aid to this deceit."

Accordingly, he enjoined use of the land as a driveway or roadway and enjoined the running of an eight inch water line to the lot in violation of the restrictive covenant. Thereafter, Eisenstadt was held in contempt for violating the injunction.

## I.

Eisenstadt contends the action of the trial court in enjoining him from using his property as an access driveway to other property owned by him is contrary to public policy and such use should not be precluded by restrictions of record. The only case he cites in support of this position is *Barbieri v. Ongaro,* 208 Cal. App. 2d 753, 25 Cal. Rptr. 471. This is no doubt based on a supplemental note to 25 A.L.R.2d 904, the A.L.R. Later

Case Service at page 821 having said with reference to this particular case:

> "The construction of a roadway was not violative of a restriction where it did not affect the residential use of the property."

The court in that case said, however:

> "The trial Judge viewed the premises, and is in a better position than we to determine the effect of the roadway upon the residential use of plaintiffs' premises and the other lands designed to be benefited by the restrictions. We accept the conclusion of the trial court that the proposed roadway for access to properties outside those subject to the present restrictions was not a residential use within the meaning of the three party agreement." 208 Cal. App. 2d at 758.

We have found no case in Maryland precisely on the subject. *Smith v. Government Realty*, 172 Md. 547, 192 A. 341 (1937) is cited by some authorities as holding that a right-of-way may be created where the property is restricted to residential use. It did not so hold. The argument in that case appears to have been over a proposal to divide two lots of 50 feet in width into lots of a width of 25 feet so that there would be four lots 25 feet wide, with a dwelling to be erected on each and to open a private alleyway 15 feet in width across the lots. Judge Parke there said for this Court:

> "1. The two restrictions on which the plaintiffs rely are these:
>
> " '2nd. That no portion of the dwelling house shall be nearer to the side lines of the lot than five feet.
> * * *
>
> " '4th. That one dwelling only shall be erected on each lot twenty-five feet wide, or two on a lot fifty feet wide.'
> * * *
>
> "2. The attention of the court has not been directed to any restriction which would in terms prevent the

laying of the contemplated private alley or way over any portion of the defendant's lots. Neither is such a way a use of the lot which is inferentially denied by any restrictive provision. Nor would it mark a subdivision of the two lots over which it is to pass for the purpose of the evasion of any restriction imposed. The record does not disclose a sufficient ground for equitable interference * * *." *Id.* at 550-51.

A careful examination of the record in *Smith* shows there was no restriction requiring property to be used for residential purposes only.[1]

In an annotation in 25 A.L.R.2d 904 (1952) entitled "Maintenance, use, or grant of right of way over restricted property as violation of restrictive covenant" at 911 it is stated:

"It has generally been held that the maintenance, use, or grant of a right of way across property whose use is restricted to residential purposes violates a covenant imposing such restriction where the right of way is to be used as an incident to a use other than for residential purposes.

"The reasoning underlying such holding is that while covenants restricting the use of property to residential purposes necessarily permit any use of such property reasonably consistent with its use for residential purposes, they plainly imply that the restricted property is not to be put into service as an incident to a forbidden business or commercial enterprise, even though such business or enterprise is situated on adjacent unrestricted land."

Although we find no cases precisely in point elsewhere, there are four which are relevant, namely *Braes Manor Civic Club*

---

1. The restrictions apparently were created in 1890. An interesting commentary on our changing times is that it was thought necessary in Baltimore City to have restrictions saying there could be no more than four horses and two cows kept on the premises and there could be no pigs and laying precise requirements as to the construction of privy vaults!

*v. Mitchell,* 368 S.W.2d 860 (Tex. Civ. App. 1963); *Callaham v. Arenson,* 239 N. C. 619, 80 S.E.2d 619 (1954); *Thompson v. Squibb,* 183 So. 2d 30 (Fla. Dist. Ct. of App. 1966); and *Donald E. Baltz, Inc. v. R. V. Chandler & Co., Inc.,* 248 S.C. 484, 151 S.E.2d 441 (1966).

In *Braes, supra,* the defendant was the owner of lots 4, 5, 6 and 7 in a subdivision while the plaintiff owned lot 8. The restrictions on the various lots were as follows:

> "Each lot in said Braes Manor, Section Two, shall be used for residential purposes only, upon which family dwellings may be erected as follows:
>
> "a) a single family dwelling of one, one and one-half or two stories may be erected on any lot in said Section Two * * *.
>
> "b) a duplex apartment or multiple units dwelling building may be erected on Lots * * * 4, 5, and 6 * * *."

Defendants erected apartment buildings on lots 4, 5 and 6 and paved lot 7. Plaintiff sought to enjoin the use of lot 7 as a parking lot. In granting the injunction the court stated:

> "It is our view that defendants violated the restrictions applicable to lot 7. Lot 7 is restricted to residential use, and to erection of a one, one and one-half, or two story family dwelling thereon. Use as a parking lot of lot 7, for tenants of lots 4, 5 and 6 is not such residential use as prescribed and required by the restrictions. A parking lot is not a residence, and use as a parking lot for the residents of lots 4, 5 and 6 does not, in our view, constitute 'residential use' as prescribed by the restrictions." *Id.* at 861.

In *Callaham, supra,* land was restricted to residential use. The owner of certain of the lots proposed resubdividing within the limits imposed as to lot sizes and set back distances and in so doing to use part of certain lots for streets within the subdivision. On those facts, it was held that there was no violation, that the plans conformed to the original restrictive covenant.

In *Thompson, supra,* the court said:

> "The critical question may be stated as:
> "Is a covenant running with the land that all land included in a named platted subdivision 'shall be used for residential purposes only' violated by an owner voluntarily constructing a street right of way across part of a lot of the subdivision to serve as a connecting roadway between a street of the subdivision with that of *another* subdivision?
> * * *
> "There is no ambiguity in the expression 'shall be used for residential purposes only.' As employed in this covenant, the word 'only' is synonymous with the word 'solely' and is the equivalent of the phrase 'and nothing else.' *Moore v. Stevens, supra.* [90 Fla. 879, 106 So. 901 (1925)] Property restricted to use for residential purposes, so long as it is in good faith used for such, may be also used to a minor extent for the transaction of some classes of business or other pursuits so long as such is merely casual or unobtrusive and results in no appreciable damage to neighboring property nor inconvenience, annoyance or discomfort to neighboring residents. However, such additional use must be reasonably incidental to residential uses and such an inconsequential breach of the covenant as to be in substantial harmony with the purpose of the parties in making the covenants, and without substantial injury to the neighborhood. *Moore v. Stevens, supra.*
> "It is obvious that the use of defendant's lot as a connecting street so that there would be access from the streets of the *adjoining* subdivision to those of the subdivision for whose benefit the restrictive covenants were made is not in any sense a residential use or a use incidental thereto." *Id.* at 32-33. (emphasis added)

In *Baltz, supra,* the lots were subject to restrictive covenants, including the following:

> "1. No lot shall be used except for residential purposes. * * * 3. No trailer * * * shall at any time be

used as a residence temporarily or permanently, * * *
8. This property shall be used for single family residences only * * *."

Defendant constructed a street across certain of the lots to another portion of the subdivision. The court said:

"No precedent has been found in this jurisdiction on similar facts and Chandler cites and relies upon *Bove v. Giebel,* 169 Ohio St. 325, 159 N.E.2d 425. In this case, the defendants owned a six acre tract adjoining a subdivision and they proposed to use a twenty-five foot strip across a subdivision lot as a private drive for the occupants of two residences to be constructed on the six acre tract. The lot was restricted to use for residence purposes only and an injunction against the use of a portion of it as a driveway to property outside the subdivision was sought. The defendants offered to impose the same restrictions on the use of the six acre tract as those which prevailed in the subdivision. The court denied the injunction stating:

" 'As to property in a subdivision, that is restricted to use for residence purposes only, there have been decisions preventing its use as a means of ingress to and egress from property outside the subdivision that is not restricted to the same extent as the property within the subdivision. * * * However, we have found no cases involving a situation such as presented by the instant case where the property outside the subdivision will be restricted by its owners to the same extent as that within the subdivision. Hence, our conclusion is that the owners of a lot in a subdivision which lot is restricted to use "for residence purposes only," may use such lot as a means of ingress to and egress from adjoining land that they own outside the subdivision if they impose upon such outside land the same restrictions that are applicable to lots within the subdivision.'

"The court also pointed out that the use of the driveway would be for residence purposes only and that the covenant did not restrict the use of the property to residence purposes within the subdivision only, concluding: 'If it had been the intention of those who prepared these restrictions to require use not merely "for residence purposes only" but "for residence purposes in the subdivision only," it is apparent that they did not express such an intention.' In the light of this leg of the decision, Chandler urges that *Bove* is a 'compelling precedent' for the conclusion that the use of lot 18 as a private driveway to a single family residence situated on adjoining property is not a violation of the restrictions on the lot. We do not so regard it.

"When covenants 1 and 8, *supra,* are read together, as they must be, *we find that the permitted residential use to which the property* **shall** *be put is as the site of a single family residence, and, of course, such other use as may be incidental to the occupation of the residence as a habitation.* \* \* \*

\* \* \*

"The point is too clear to warrant an extended exposition. The existence of the drive or roadway is not incidental to residential use within the meaning of the restrictions. Instead, it is incompatible with the only conforming use to which the property may be put, to wit: a single family residence. Under Chandler's plan, the primary, even exclusive, use of lot 18 is for a roadway. This may not be equated to the use of part of a residential lot as a driveway, which is an incidental, residential use." *Id.* at 488-90. (emphasis added except for the word "shall" which is in the original)

In *Martin v. Weinberg,* 205 Md. 519, 109 A. 2d 576 (1954) deeds were made subject to the restriction of building not more than one dwelling house on a lot "all of which said dwelling houses shall be used for residence purposes only." A parking

lot for a food store was placed on a portion of the land. This Court through Judge (later Chief Judge) Henderson in holding the parking lot a prohibited use said in part:

"We have frequently stated and applied the rule of strict construction in favor of the unrestricted use of property. Cf. *Himmel v. Hendler*, 161 Md. 181, *Osborne v. Talbot*, 197 Md. 105, and *Trunck v. Hack's Point Com. Ass'n., supra*. But this does not mean that language must be so narrowly construed as to defeat its general purpose. Literally, the words 'shall not build or erect * * * more than one dwelling house' do not refer to the land itself. But, obviously, a use of the land for 'open-air' parking or other commercial use, virtually unknown at the time the restrictions were drafted in 1914, would defeat the general purpose to limit the use of the dwellings contemplated, to residence purposes only. And it may well be that the improvements necessary to render the land suitable for such a use would constitute 'building'. Cf. *Jenney v. Hynes*, 189 N. E. 102 (Mass.)." *Id*. at 526-527.

There can be no question but that the apartment use of Eisenstadt on the adjoining land is a residential use. In *Yorkway Apts. v. Dundalk Company*, 180 Md. 647, 26 A. 2d 398 (1942) our predecessors were concerned with a proposal to construct two or more buildings, each to contain four apartments, two on the first floor and two on the second floor. Judge (later Chief Judge) Marbury there said for this Court:

"The Bethlehem deed provides that the land shall be used for residence purposes only, and no building of any kind whatsoever shall be erected or maintained thereon except dwelling houses and private garages. * * *

* * *

"We think the use of the land for the kind of two-story apartments proposed to be constructed by the appellant is a use for residence purposes. That was indicated in the case of *Saratoga Building Co. v.*

*Stables, Inc.,* 146 Md. 152, 128 A. 270, 271, where it was said: 'The words "residence purposes" are susceptible of being construed as including the erection of a residential apartment house, and in view of the conditions shown by the record, we think such a construction is reasonable and should be adopted.' " *Id.* at 648-649.

Thus it might be argued that since the Eisenstadt use is a residential use and the roadway is incidental to such residential use such use is not precluded by the restriction. In this regard, however, one must examine the entire restriction. In carefully examining the restrictions imposed we note that the lots were to be used for residential purposes only, that no structure was to be erected thereon except a single dwelling and that this was modified by the permission granted for a private garage. All such restrictions must be interpreted in the light of reason. We conclude it was the intent of the restriction to permit erection on the premises only of a dwelling calculated to accommodate a single family unit as differentiated from a double house or an apartment house. We see no other interpretation that could be put on the word "single" inserted prior to the word "dwelling". This would carry with it the right to erect such other structures (sidewalks, garage, etc.) as might be incidental to the use of such single dwelling. A roadway is a type of structure. This roadway was not a single family structure—nor was it to serve one. Therefore, the use of the property as a means of access to an apartment house or apartment houses on adjoining land not within the subdivision is not a use permitted under the restriction. Accordingly, the chancellor must be sustained on that point.

## II.

In defiance and with full knowledge of the covenant relative to the water line Eisenstadt constructed an eight inch line across the property in question. He objects to this covenant because it does not affect all land in the subdivision. Also, he says, "[i]t is unreasonable and against public policy to permit a private property owner to restrict the size of a water connection to a publicly owned water line, where no restriction was

placed thereon prior to acquisition of the line by the utility." and, "[i]t is further against public policy and not within reasonable bounds to require the Defendant to make a water connection in the middle of a heavily traveled dual highway, U. S. Route 40, necessitating a tunnelling operation, where the alternate connection in the bed of Redwood Circle would create no different effect on the property owners herein complaining."

The only case cited by Eisenstadt is *Turner v. Brocato,* 206 Md. 336, 111 A. 2d 855 (1955). In that case Judge (now Chief Judge) Hammond for this Court quoted with approval *McKenrick v. Savings Bank of Baltimore,* 174 Md. 118, 197 A. 580 (1938) wherein Judge Offutt said for the Court:

> "These cases sufficiently establish as the law of this state these principles: That one owning a tract of land, in granting a part thereof, may validly impose upon the part granted restrictions upon the use thereof for the benefit of the part retained, and upon the part retained for the benefit of the part granted, or upon both for the benefit of both; that, where the covenants in the conveyance are not expressly for or on behalf of the grantor, his heirs and assigns, they are personal and will not run with the land, but that, if in such a case it appears that it was the intention of the grantors that the restrictions were part of a uniform general scheme or plan of development and use which should affect the land granted and the land retained alike, they may be enforced in equity; that covenants creating restrictions are to be construed strictly in favor of the freedom of the land, and against the person in whose favor they are made; and that the burden is upon one seeking to enforce such restrictions, where they are not specifically expressed in a deed, to show by clear and satisfactory proof that the common grantor intended that they should affect the land retained as a part of a uniform general scheme of development." *Id.* at 128.

The water line restrictions were for the benefit of other land retained by Barron and other land in the subdivision developed by Barron's predecessor, the original developer.

In *Grubb v. Guilford Ass'n*, 228 Md. 135, 178 A. 2d 886 (1962) Judge (now Chief Judge) Hammond said for this Court:

"We think *Dr. Grubb's actual knowledge of the covenant before he bought,* his unwarranted assumptions as to the intent of the Association, *his failure either to obtain a written waiver of the restriction* or to require the Association officials to spell out in detail how far they proposed to unbend, *and the substantial interest of the Association in maintaining its property rights protected by the covenant, leave no room for the application of the doctrine of comparative hardship, which the appellant urges should be applied to protect him. Cf. Easter v. Dundalk Holding Co.,* 199 Md. 303, 305, and *Dundalk Holding Co. v. Easter,* 215 Md. 549, 555-556." *Id.* at 140. (emphasis added)

Eisenstadt is in no position to complain that the restrictions were not within reasonable bounds. We think they were within reasonable bounds, but Eisenstadt knew of the water line restriction. He accepted the deed. We must conclude he knew what was in the deed. The restriction is clear and unambiguous. It is a valid restriction for the protection of certain of the other lots in the subdivision, seven of which were owned by Barron. Eisenstadt has other means of acquiring water.

There is no merit in his contention that the injunction is contrary to public policy in that by indirection it unreasonably limits the right of a public utility to extend its services. It is not directed to a municipality or public utility which is seeking to extend its services. It is intended to be an injunction of a trial court enjoining Eisenstadt from breaking a covenant in his deed from his grantor regarding a restriction as to the use of his land.

It is impossible to construe a one inch restriction as permitting an eight inch connection.

There was no error on the part of the chancellor as to this injunction except that it should have required the removal of the pipe as hereinafter noted.

### III.

At the conclusion of the litigation relative to the water line the court passed an order which provided in pertinent part:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the said Naum P. Eisenstadt, Trustee, be enjoined from running an eight inch water line through the said lot in violation of the restrictive covenant in the said deed."

On May 2, 1968, Barron filed a petition in the trial court al leging that while the injunction matter was on appeal to this Court Eisenstadt on February 23, 1968, executed a deed of easement to the City of Hagerstown purporting to give it a perpetual easement to maintain a water line across the lot in question, alleging that said easement was executed to circumvent the order of the trial court and praying that Eisenstadt be held in contempt. The answer filed admitted all matters except that the deed of easement was executed to circumvent the lawful order of the trial court. Eisenstadt testified that although he had granted the deed of easement to the city he still retained ownership of the eight inch water line and he was in a position to remove said water line should this Court affirm the previous decision of the Circuit Court for Washington County.

The trial court held Eisenstadt in contempt and imposed a fine of $1000.00.

No supersedeas bond having been filed pursuant to the provisions of Maryland Rules 817, 818 and 820, Eisenstadt's appeal did not stay the effect of the trial court's injunction.

Maryland Rule BB70 states:

" 'Injunction' means an order either (1) mandatory or affirmative, requiring or commanding the doing of the action specified, or (2) prohibitory or negative, restraining or forbidding the doing of the action specified."

Maryland Rule BB78 a states:

"An order granting an injunction shall set forth the reasons for its issuance; shall be specific in terms; and

shall describe in reasonable detail, and not by reference
to the complaint or other document, the act sought to
be required or commanded or restrained or forbidden."

Maryland Rule BB78 a provides that a person shall not be
bound by an order granting an injunction until he shall have
received actual notice thereof by personal service or otherwise.

No point was made below nor is any point made on appeal
as to whether or not the injunction was actually served upon
Eisenstadt. The record does not disclose that any writ of in-
junction was ever issued. Assuming, however, that Eisenstadt
was actually served with a writ of injunction in language sim-
ilar to that in the court's order of December 11, we hold the
actions by Eisenstadt not to amount to contempt of the court.
That order prohibits the installation of a water line, an in-
stallation that admittedly had taken place prior to the passage
of the order. In other words, it is a prohibitory injunction is-
sued after the fact of installation of the water line, not a man-
datory injunction requiring removal of the water line. The deed
of easement was not violative of the specific terms of the trial
court's order.

*Case no. 28*

*So much of order as enjoins use of
driveway affirmed and order re-
versed in part and case remanded
for passage of a mandatory in-
junction requiring removal of the
eight inch water line; appellant
to pay the costs.*

*Case no. 223*

*Order reversed; appellant to pay the
costs.*