814 A.2d 585

**NAMLEB CORPORATION et al.**

v.

**Patrick GARRETT et al.**

**No. 283, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Dec. 30, 2002.

Matthew S. Sturtz (Tessa L. Frederick and Miles & Stockbridge, P.C., on the brief), Baltimore, for appellants.

James M. Connolly (Kramer & Connolly, on the brief), Owings Mills, for appellees.

Argued before HOLLANDER, JAMES R. EYLER and KRAUSER, JJ.

JAMES R. EYLER, Judge.

The question in this case is whether the Circuit Court for Howard County correctly interpreted a restrictive covenant in a Declaration of Covenants applicable to the lots in a particular subdivision and, if so, properly enforced the covenant by granting injunctive relief. More particularly, the question is (1) whether a covenant that limited use of a lot to a single family dwelling and to "residential purposes" prohibited the construction of a road on the restricted lot for the purpose of providing access to lots in an adjoining subdivision and (2) if so, whether injunctive relief was proper. The circuit court held that the covenant did prohibit the proposed use and granted injunctive relief. We shall affirm.

## Factual Background

Beaufort Park is a subdivision that was in existence for many years prior to the events relevant to this case. All lots in Beaufort Park are subject to a Declaration of Covenants, dated August 7, 1973, and recorded among the Land Records in Howard County. Patrick and Diane Garrett, appellees, own a home in Beaufort Park purchased on November 28, 1997.

William and Mary Ann Guthier, the remaining appellees, own a home in Beaufort Park purchased on February 26, 1999.

The pertinent portion of the Beaufort Park covenants is as follows. Covenant (1) provides, in pertinent part, "No lot shall be used except for residential purposes, however, a medical doctor may maintain an office in his home provided he is a bona fide resident. No residence other than one detached single-family dwelling shall be erected on any one lot in said subdivision."

On February 1, 1989, the Namleb Corporation (Namleb), one of the appellants, purchased Lot 20 in Beaufort Park, located on a cul-de-sac accessed by Penelope Court, and improved by a single family dwelling. On the same day, Namleb also purchased a large tract of land known as Lot 14, located adjacent to the Beaufort Park subdivision.

On October 30, 1990, Namleb recorded a plat in the Land Records of Howard County, reflecting the subdivision of parcel 14 and former Lot 20 in Beaufort Park into 9 lots known as Beaufort Estates. As ultimately proposed by Namleb, a large portion of former Lot 20 in Beaufort Park, including the house, was designated as part of Lot 1 in Beaufort Estates. The remaining portion of former Lot 20 was subdivided into "pipe-stems" to provide access from 6 undeveloped lots in Beaufort Estates to Penelope Court. Under the proposal, Lot 1 in Beaufort Estates would have direct access to Penelope Court, and lots 2 through 6 in Beaufort Estates would have access to Penelope Court utilizing the "pipe-stems."

On May 22, 1991, Namleb recorded a Declaration of Covenants, Conditions, and Restrictions for Beaufort Estates in the Land Records of Howard County. Much later, and prior to this litigation, Namleb conveyed lots 2 and 4 in Beaufort Estates to Gordon VanderBrug, James Achterhof, and James Ellis, trustees of the Richard D. Van Lunen Charitable Foundation, the remaining appellants. Appellants, collectively, own all of the lots in Beaufort Estates to be serviced by the access roads in question.

On August 14, 2000, appellees filed a Verified Complaint for Declaratory and Injunctive Relief, pursuant to Maryland Code, Courts and Judicial Proceedings Article, Sections 3–406 and 3–409, naming appellants as defendants. Appellees alleged that Namleb's construction of access driveways over Beaufort Park Lot 20 would violate Beauford Park's restrictive covenant limiting the use of lots to single family dwellings for residential use only. Appellees alleged that the road was for the commercial development of Beaufort Estates, not for the residential use of Beauford Park Lot 20.

On October 26, 2000, appellants filed a motion to dismiss or, in the alternative, a motion for summary judgment. The circuit court denied the motion. On January 31, 2001, a consent order granting an interlocutory injunction was entered, preventing appellants from using Beaufort Park Lot 20 as a roadway or driveway. On August 14, 2001, and November 21, 2001, the court held hearings to determine whether appellants had violated the restrictive covenants at issue and, if so, the nature of the relief to be granted. On March 14, 2002, the court, in a memorandum opinion and order, concluded that the covenants in question were unambiguous and that appellants' proposed use would violate the covenants. The court also concluded that injunctive relief was appropriate, and it enjoined appellants from using Lot 20 in Beaufort Park as a roadway or driveway to serve property outside of Beaufort Park. Appellants filed a notice of appeal.

## Standard of Review

Although Md. Rule 8–131(c)(2002) provides a clearly erroneous standard for our review of a trial court's ruling on the evidence in an action tried without a jury, no deference is given to the trial court for "questions of law or legal conclusions drawn from factual findings." *See ST Sys. Corp. v. Maryland Nat'l Bank,* 112 Md.App. 20, 27, 684 A.2d 32 (1996); *Van Wyk v. Fruitrade,* 98 Md.App. 662, 669, 635 A.2d 14 (1994).

■ The decision to grant or deny an injunction has traditionally been given considerable deference. *See J.L. Matthews, Inc. v. Maryland–National Capital Park & Planning Comm.*, 368 Md. 71, 93, 792 A.2d 288 (2002). The grant of an injunction is reviewed for abuse of discretion. *See El Bey v. Moorish Sci. Temple of Am.*, 362 Md. 339, 354–55, 765 A.2d 132 (2001). We give no deference to the trial court, however, if there is a clear error of law. *See Id.* (quoting *Western Md. Dairy, Inc. v. Chenowith*, 180 Md. 236, 244, 23 A.2d 660 (1941)); *see also State Comm'n on Human Rels. v. Talbot County Det. Ctr.*, 370 Md. 115, 127, 803 A.2d 527 (2002); *Colandrea v. Wilde Lake Community Ass'n, Inc.*, 361 Md. 371, 394, 761 A.2d 899 (2000).

## Discussion

### Intended Use of Beaufort Park Lot 20

The restrictive covenant at issue provides, in part: "(1) LAND USE AND BUILDING TYPE. No lot shall be used except for residential purposes ... No residence other than one detached single family dwelling shall be erected on any one lot in said subdivision." Appellants contend that, although there are no cases directly on point in Maryland, treatises and case law from other states indicate that the proposed access way on Beaufort Park Lot 20 is for "residential purposes" within the meaning of the covenant. Appellees contend that the plain meaning of the covenant and the decision in *Eisenstadt v. Barron*, 252 Md. 358, 250 A.2d 85 (1969), prohibit the access road because the road would violate the covenant by serving multiple homes outside of the Beaufort Park subdivision. Appellants attempt to distinguish *Eisenstadt* by pointing out that, in that case, the access road to an adjoining lot was to service apartments to be built. Appellants conclude that the dispositive fact in *Eisenstadt* was the nature of the building (*i.e.*, a multiple family dwelling, an apartment building) and not its location. Additionally, appellants point out that Beaufort Estates is limited to single family homes, and the covenants applicable to those lots impose greater restrictions than those imposed by the covenants in Beaufort Park.

Courts in several states have addressed whether an access way over restricted property is a violation of a restrictive covenant limiting the use of such property. In several cases, the language of the covenant was the same as or similar to the covenant in this case. *See, e.g.,* cases collected in V. Woerner, Annotation, *Maintenance, Use or Grant of Right of Way Over Restricted Property as Violation of Restrictive Covenant,* 25 *A.L.R.*2d 904 (1952). Each case must be decided on its own facts, of course, because there are many variables, including the language in the covenant. With respect to covenants restricting property to "residential" use with no more than one single family dwelling, courts have split in their view as to whether the use is limited to serving the property in question.

If we were writing on a clean slate, we might agree with appellants. We are not, however, and we regard *Eisenstadt* as controlling. In that case, Eisenstadt purchased land from Barron. *Eisenstadt,* 252 Md. at 359, 250 A.2d 85. A restrictive covenant upon the land required that it be used only for residential purposes and contain only a single family dwelling. *Id.* at 360, 250 A.2d 85. Eisenstadt also owned an apartment building adjacent to his lot, which was not a part of the property governed by the restrictive covenant. *Id.* at 361, 250 A.2d 85. Eisenstadt constructed a driveway over his lot to access his apartment building. *Id.* The Court of Appeals acknowledged that "it might be argued that since the Eisenstadt use is a residential use and the roadway is incidental to such residential use such use is not precluded by the restriction." *Id.* at 369, 250 A.2d 85. The Court reasoned, however, that "it was the intent of the restriction to permit erection on the premises only of a dwelling calculated to accommodate a single family unit ... We see no other interpretation that could be put on the word 'single' inserted prior to the word 'dwelling.' " *Id.* The Court acknowledged that this included the right to construct roads or other structures "incidental to the use of such single dwelling." *Id.* Because the road in question was going to serve more than one residence, the Court of Appeals concluded "the use of the property as a means of access to an apartment house or apartment houses

on adjoining land not within the subdivision is not a use permitted under the restriction." *Id.*

Similarly, in the case *sub judice,* appellants wish to construct an access road over a lot subject to a covenant restricting use to a single family residence. The proposed access road would serve more than one residence, all of which would be located outside of the subdivision. We disagree with appellant's assertion that, because the proposed building in *Eisenstadt* was an apartment building, *Eisenstadt* is distinguishable. The decision was premised on the fact that the proposed road would service multiple residences. Whether for apartments or multiple homes, the proposed road in *Eisenstadt* and the proposed road in this case were intended to serve multiple residences and, in both instances, outside of the subdivision. Applying the reasoning in *Eisenstadt,* we hold that the proposed access road(s) is prohibited by the restrictive covenant.

Appellants urge us to rely on *Bove v. Giebel,* 169 Ohio St. 325, 159 N.E.2d 425, 1959 Ohio Lexis 607 (1959), in which the Supreme Court of Ohio held that an access road to property outside of a subdivision fell within the subdivision's residential use only covenant. *Id.* at 428,. In that case, Bove, who resided on Lot 28, purchased from Giebel, the owner of Lot 29, a 25 foot strip of land originally part of Lot 29, and an unimproved six-acre parcel outside the subdivision. *Id..* Bove intended to construct two dwellings on the unimproved parcel. *Id.* Bove wanted to access the unimproved parcel by a road to be constructed on the 25 foot strip of Lot 29, that he had annexed. *Id.* Giebel countered that the road was not for a residential use within the meaning of the restrictive covenant that applied to land in the subdivision. *Id.* The Supreme Court of Ohio concluded that for the restrictive covenant to prohibit the access road, it would have to read, "not merely a use 'for residence purposes only' but 'for residence purposes in the subdivision only.'" *Id.,* 159 N.E.2d at 428. The problem with relying on *Bove* is that it is not the law in Maryland. *See Eisenstadt,* 252 Md. at 369, 250 A.2d 85.

As previously noted, other states considering the issue before us have reached different conclusions. "The cases are divided fairly evenly on the question of whether relief should be granted when a right of way is placed across a lot in a restricted subdivision." *Austin v. Durbin*, 160 Ind.App. 180, 310 N.E.2d 893, 897 (1974); *see* 25 A.L.R.2d 904, *supra.* Some decisions, generally in accord with Maryland law, have held that access ways to serve property other than the restricted property violated covenants restricting use to residential purposes. *See Pelosi v. Wailea Ranch Estates*, 10 Haw. App. 424, 876 P.2d 1320, 1327 (1999) (developer was in breach of residential use only restrictive covenant by building access road in restricted subdivision leading to another subdivision); *Austin v. Durbin*, 310 N.E.2d at 897 (proposed roadway across restricted lot to access adjacent unrestricted tract violated residential use only restriction); *Stockdale v. Lester*, 158 N.W.2d 20, 22 (Iowa 1968) (roadway on restricted lot to access a new subdivision violated residential restriction); *Beyt v. Woodvale Place Apartments*, 297 So.2d 448, 449–50 (La.Ct. App.1974) (paved boulevard for access to apartment complex adjacent to restricted subdivision violated residential use only covenant); *Klapproth v. Grininger*, 162 Minn. 488, 203 N.W. 418, 419 (.1925) (using strip of land for access to adjacent parcel violated residential use only covenant); *A.A. Home Improv. Co. v. Hide–A–Way Lake Club, Inc.*, 393 So.2d 1333, 1336–37 (Miss.1981) (access road connecting two subdivisions violated residential use restriction in one of the subdivisions); *Taylor v. Kenton*, 105 N.C.App. 396, 413 S.E.2d 576, 578 (1992) (use of lots to access land outside of restricted subdivision violated residential use only restrictive covenant); *Duklauer v. Weiss*, 18 Misc.2d 747, 182 N.Y.S.2d 193, 198 (N.Y.Sup.Ct.1959) (same); *Wallace v. Clifton Land Co.*, 92 Ohio St. 349, 110 N.E. 940, 943 (1915) (public street prohibited over land restricted to residential use); *Hanley v. Misischi*, 111 R.I. 233, 302 A.2d 79, 82 (1973) (street constructed over one lot in subdivision to benefit a second subdivision violated residential use only restrictive covenant); *Duggan v. Buckner*, 155 S.W.2d 661, 664 (Tex.Civ.App.1941) (use of a lot in a

subdivision as an access way violated residential use only restrictive covenant).

Other decisions, more in line with *Bove,* have held that access roads did not violate restrictive covenants. *See Casebeer v. Beacon Realty, Inc.,* 248 Ark. 22, 449 S.W.2d 701, 703 (1970) (access way over lots in subdivision restricted to residential use only did not violate that restriction as long as they served only lots in that same subdivision); *Lake Arrowhead, Inc. v. Jolliffe,* 263 Neb. 354, 639 N.W.2d 905, 912 (2002) (access road from one lot in subdivision restricted to residential use only leading to an adjacent unrestricted parcel did not violate restriction to residential use only); *Baxendale v. Property Owners Asso.,* 285 A.D. 1148, 140 N.Y.S.2d 176, 177–78 (N.Y.App.Div.1955) (public road construction did not violate residential use only covenant); *Riverview Property Owners Asso. v. Hewett,* 90 N.C.App. 753, 370 S.E.2d 53, 54 (1988) (pathway over lot restricted to residential use only to access adjacent unrestricted lot with recreational home did not violate residential restrictive covenant); *Callaham v. Arenson,* 239 N.C. 619, 80 S.E.2d 619, 624–25 (1954) (subdivision of lots and road between lots not prohibited by covenant restricting use to residential purposes).

Some courts have reasoned that a balance must be struck between the proposed construction and any detriment to the residents. *See Barbieri v. Ongaro,* 208 Cal.App.2d 753, 25 Cal.Rptr. 471, 474 (1962) ("proposed roadway for access to properties outside those subject to the present restrictions was not a residential use"); *R.R. Improv. Asso. v. Thomas,* 374 Mich. 175, 131 N.W.2d 920, 924 (1965) (before determining whether access road to adjacent lot violates covenant restricting use to residential purposes, as held in *Bove, supra,* court should evaluate adverse effects on residents).

At first glance, many of the above cases appear to be inconsistent but are reconcilable upon analysis of the facts. Nevertheless, there is a disagreement among courts as to whether a covenant limiting use of property to a single family dwelling and for residential purposes only prohibits an access

road intended to serve property not subject to the restrictive covenant. As previously indicated, the holding in *Eisenstadt* was premised on the conclusion that such an access road violated the covenant because it served multiple residences located outside of the restricted properties.

*Injunction*

■ Having concluded that the access road over Lot 20 is prohibited by the restrictive covenant in force in Beaufort Park, we turn to the issuance of the permanent injunction to enjoin construction of the proposed road. Appellants contend that injunctive relief was improper because appellees failed to prove irreparable harm or hardship.

■ We recognize that, in general, a party seeking injunctive relief has been required to demonstrate irreparable harm in order for the writ to issue. *El Bey v. Moorish Science Temple of America, Inc.*, 362 Md. at 355, 765 A.2d 132 (2001). The harm need not be great, however, and it is irreparable when it cannot be measured by any known pecuniary standard. *Id.* The Court of Appeals has recently confirmed that a permanent injunction is a proper means of enforcing a restrictive covenant, provided certain guidelines are met. *See Colandrea v. Wilde Lake Community Ass'n*, 361 Md. at 381, 761 A.2d 899 (2000) ("An injunction will lie to enforce a restrictive covenant with respect to the use of the land conveyed, provided proper ground therefor exists.").

In *Colandrea*, the property owner resided in the Wilde Lake Subdivision in Columbia, Maryland. *Id.* at 377, 761 A.2d 899. A restrictive covenant in force in the subdivision provided that the property owner could not conduct any home office or professional work on his land without approval from the community association. *Id.* at 377–78, 761 A.2d 899. The property owner wanted to use part of his property as an assisted living facility for seniors. *Id.* at 378, 761 A.2d 899. After the community association reviewed his plans and denied his request, the property owner stated his intention to operate the senior center anyway. *Id.* at 379, 761 A.2d 899.

The community association initiated an action in circuit court, claiming the property owner's proposed use would violate the restrictive covenant on the land. *Id.* The association contended the senior living facility would increase the traffic, noise, and trash in the area. *Id.* The association was also concerned about overdeveloping the property (*i.e.,* constructing two buildings), about medical waste, ambulances, and other project specific issues. *Id.* at 379–80, 761 A.2d 899.

In *Colandrea,* the circuit court granted a permanent injunction prohibiting the use of the property as a senior assisted living facility. *Id.* at 376, 761 A.2d 899. The Court of Appeals affirmed, stating: "This Court finds that injunctive relief is necessary in the instant case in order to maintain the integrity of a restrictive covenant." *Id.* at 382, 761 A.2d 899. The Court of Appeals noted that ordinarily a trial court has wide latitude to enforce restrictive covenants by means of permanent injunctions so long as the restrictions in the covenant are reasonable and "made in good faith, and not highhanded, whimsical or captious in manner". *Id.* at 394, 761 A.2d 899 (quoting *Kirkley v. Seipelt,* 212 Md. 127, 133, 128 A.2d 430 (1957); *see also Mikolasko v. Schovee,* 124 Md.App. 66, 88, 720 A.2d 1214 (1998), aff'd, 356 Md. 93, 737 A.2d 578 (1999); *Souza v. Columbia Park and Recreation Association, Inc.,* 70 Md.App. 655, 657, 522 A.2d 1376 (1987). The Court observed that a restrictive covenant is contractual in nature, and a suit to enforce it is in the nature of specific performance. *Colandrea,* 361 Md. at 395–96, 761 A.2d 899. Specific performance may be granted in an appropriate case on the basis of the strength of the circumstances and equities of each party. *See Zouck v. Zouck,* 204 Md. 285, 296, 104 A.2d 573 (1954).

The covenant in *Colandrea* was not challenged as unreasonable, nor was the restriction in the covenant highhanded, whimsical, or captious. *Id.* at 399–400, 761 A.2d 899. The only question, therefore, was whether the doctrine of comparative hardship required a reversal. *Id.* 396–97, 761 A.2d 899. That doctrine, in the context of injunctive relief to enforce restrictive covenants, provides that "a court may

decline to issue an injunction where the hardship and inconvenience which would result from the injunction is greatly disproportionate to the harm to be remedied." *Id.* at 397, 761 A.2d 899 (citing *Grant v. Katson* 261 Md. 112, 114–15, 274 A.2d 88 (1971)).

When applying the doctrine of comparative hardship, the property owner's prior knowledge of the existence of the restriction, and the interest of the community in maintaining its covenants, are relevant. *Colandrea,* 361 Md. at 397–98, 761 A.2d 899 (citing *Grubb v. Guilford Association, Inc.,* 228 Md. 135, 178 A.2d 886 (1962); *Liu v. Dunnigan,* 25 Md.App. 178, 333 A.2d 338 (1975)). In *Colandrea,* the owner's prior knowledge of the covenant weighed against him, and the hardship to the other residents of the subdivision was not negligible. *Id.* Thus, the injunction was proper.

Similarly, in the case *sub judice,* we need not determine the reasonableness of the covenant itself, as it is not challenged. Appellants were aware of the restrictive covenants applicable to Beaufort Park, Lot 20. As in *Colandrea,* we do not think the appellants "can invoke the doctrine [of comparative hardship] by characterizing the potential harm that might result to his neighbors' homes as comparatively negligible." *Id.* It was reasonable to conclude that enjoining violation of the restriction was necessary to maintain the integrity of the cul-de-sac on Penelope Court and the Beaufort Park subdivision. The circuit court considered all relevant facts, including the fact that appellants' plans were on record prior to the time appellees purchased their property. The court observed, however, that appellants knew as early as 1991 that Beaufort Park residents objected to the proposed use of Lot 20. We find no abuse of discretion.

### Implied Easement of Necessity

Appellees contend that appellants failed to prove that they were entitled to an implied easement by necessity. We note that appellants, in their brief, do state that several lots in Beaufort Estates will be landlocked unless the proposed road-

way is permitted. We also note that appellants argued to the circuit court that they were entitled to an easement by necessity. The circuit court concluded that they were not so entitled, and appellants have not raised that issue in this Court. The circuit court observed that, when appellants purchased the property in question and for many years thereafter, it was not landlocked. These facts were relevant to the question of injunctive relief, but, as previously observed, the court considered all relevant facts. We cannot substitute our judgment for that of the circuit court. The question is whether it abused its discretion. It did not.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANTS.**