155 P.3d 1081

Dominick and Lynn MULTARI, Husband and wife, Plaintiffs/Appellees/ Cross–Appellants,

v.

Richard D. and Carmen GRESS, as trustees under agreement dated April Defendants/Appellants/ Cross–Appellees.

No. 1 CA–CV 06–0221.

Court of Appeals of Arizona, Division 1, Department B.

April 24, 2007.

Quarles & Brady Streich Lang LLP, by John Maston O'Neal, David E. Funkhouser III, Phoenix, Attorneys for Plaintiffs/Appellees/Cross–Appellants.

Mariscal, Weeks, McIntyre & Friedlander, P.A., by Timothy J. Thomason, Charles H. Oldham, Phoenix, Attorneys for Defendants/Appellants/Cross–Appellees.

## OPINION

BARKER, Judge.

¶ 1 We address in this appeal whether a developer may utilize private deed restrictions on multiple lots in a residential subdivision to alter uniform covenants and restrictions otherwise applicable to those lots. Based on the language in the uniform covenants and restrictions at issue in this case, and for the reasons set forth below, we determine that the private deed restrictions here are invalid.

### I.

¶ 2 Richard D. Gress and Carmen Gress ("Gresses") appeal the grant of summary judgment in favor of Dominick and Lynn Multari ("Multaris"). The Multaris cross-appeal the trial court's award of reasonable attorneys' fees and costs. The Multaris and the Gresses are neighbors in the Ocotillo Hills subdivision. The Gresses own lot 285. The Multaris own lot 290.

¶ 3 The Minnesota Title Company ("Minnesota Title") was the original legal owner of lots 244 through 297. On April 4, 1973, Minnesota Title recorded a "Declaration of Deed Restrictions" ("1973 Declaration") encumbering the lots with certain cov-

enants running with the land. One covenant stated, "No structure(s), other than residences and accessory buildings thereto, shall be placed upon any of the lots." The covenants were to run with the land for a thirty-year period and be automatically extended for successive ten-year periods "unless an instrument signed by at least two-thirds (2/3) of the then owners of the lots has been recorded, agreeing to change said covenants in whole or in part."

¶ 4 On April 17, 1973, Minnesota Title conveyed lot 290 to the Multaris' predecessors in interest. At the same time, Minnesota Title recorded certain private deed restrictions on the property ("1973 Private Deed Restrictions"). On December 16, 1975, Minnesota Title sold lot 285 to the Gresses' predecessors in interest. On January 6, 1976, Minnesota Title recorded the deed, along with certain covenants running with the land for the benefit of five surrounding lots, including lot 290 ("1976 Private Deed Restrictions"). Some of the restrictions prohibited placement of any structure less than 1400 square feet or higher than 13 feet on the property. Another term of the 1976 Private Deed Restrictions stated that if any person having an interest in lot 285 should violate the restrictions, any person having an interest in lot 290 "may sue to enjoin the transgression, to remove the offensive structure ... and to recover reasonable attorney's fees and costs." Minnesota Title recorded similar restrictions to the 1973 and 1976 Private Deed Restrictions on thirty-two of the fifty-four lots, all of which it conveyed between 1973 and 1978.

¶ 5 On or about February 15, 2005, the Gresses began construction of a "small accessory building off the back of their home." The Multaris sent a letter in April asking the Gresses to stop construction as the building was allegedly in violation of the 1976 Private Deed Restrictions. The Gresses responded by claiming that the restrictions were unenforceable.

¶ 6 On June 8, 2005, the Multaris filed a complaint against the Gresses. The Multaris asked the court to declare the 1976 Private Deed Restrictions valid and enforceable, enjoin further construction of the building, and order removal of the structure from the Gresses' property. The Multaris also requested an award of attorneys' fees and costs pursuant to Arizona Revised Statutes ("A.R.S.") section 12–341.01 (2003) and the 1976 Private Deed Restrictions.

¶ 7 The Multaris filed a motion for summary judgment and the Gresses filed a cross-motion for summary judgment. Following oral argument, the court granted the Multaris' motion for summary judgment on all claims and denied the Gresses' cross-motion. The Multaris filed an application for attorneys' fees and costs in the amounts of $25,550.50 in attorneys' fees, $1,409.45 in litigation-related costs, and $2,709.00 in additional costs for the refinancing of the Multaris' home in order to fund the litigation. The trial court awarded $18,468.50 in attorneys' fees and $1,409.45 in costs.

¶ 8 The Gresses timely appealed. The Multaris filed a timely cross-appeal contesting the award of attorneys' fees and costs. This court has jurisdiction pursuant to A.R.S. §§ 12–2101(B) (2003) and 12–120.21(A)(1) (2003).

## II.

¶ 9 We review a trial court's grant of a motion for summary judgment de novo, including interpretations of deed restrictions. *Wilson v. Playa de Serrano*, 211 Ariz. 511, 513, ¶ 6, 123 P.3d 1148, 1150 (App.2005).

### A.

■ ¶ 10 We first address whether the 1976 Private Deed Restrictions altered the 1973 Declaration. The Gresses make two arguments on appeal that hinge on the resolution of this issue. First, they argue that the 1976 Private Deed Restrictions were invalid as an amendment because they did not apply uniformly to all the properties in the subdivision. Second, they argue that the developer could not unilaterally amend the 1973 Declaration because the 1973 Declaration only provided for amendment by two-thirds of the property owners. The threshold question, however, is whether the 1976 Private Deed Restrictions altered, or acted as an amendment to, the 1973 Declaration.

¶ 11 The covenants and restrictions in the 1973 Declaration were provided explicitly "for the benefit of[ ] *each and every one*" of the lots in the subdivision. (Emphasis added.) One covenant states, "No structure(s), other than residences and accessory buildings thereto, shall be placed upon any of the lots." There are no limitations in the 1973 Declaration as to the size and/or dimensions of the accessory building. Thus, under the terms of the 1973 Declaration "each and every" lot may have "placed upon" it an accessory structure without limitation as to size. That right, obviously, accrues to the owner of the lot.

¶ 12 The 1976 Private Deed Restrictions take away that unfettered right. As to the Gresses, an accessory building would only be permitted if it were in excess of 1400 square feet and less than 13 feet in height. The record also shows that thirty-two of the fifty-four lots in the subdivision had similar restrictions. These restrictions clearly alter the 1973 Declaration permitting the construction of residences or accessory buildings of any dimensions.

### B.

█ ¶ 13 The next question is whether the developer may alter uniform covenants and restrictions through a private deed restriction.

¶ 14 In *La Esperanza Townhome Ass'n, Inc., v. Title Security Agency of Arizona,* 142 Ariz. 235, 689 P.2d 178 (App.1984), this court discussed the purpose of uniform covenants and restrictions:

Historically, restrictive covenants have been used to assure uniformity of development and use of a residential area to give the owners of lots within such an area some degree of environmental stability. To permit individual lots within an area to be relieved of the burden of [restrictive] covenants, in the absence of a clear expression in the instrument so providing, would destroy the right to rely on restrictive covenants which has traditionally been upheld by our law of real property.

*Id.* at 238, 689 P.2d at 181 (quoting *Montoya v. Barreras,* 81 N.M. 749, 473 P.2d 363, 365 (1970)). In *Riley v. Boyle,* 6 Ariz.App. 523, 526, 434 P.2d 525, 528 (1967), this court declined to adopt a certain interpretation of a declaration of uniform covenants and restrictions because doing so "could easily result in a patchwork quilt of different restrictions . . . and completely upset the orderly plan of the subdivision."

¶ 15 Minnesota Title recorded the uniform covenants and restrictions in the 1973 Declaration, including the right to construct accessory buildings of any dimension, for the benefit of "each and every" lot. The covenants in the 1973 Declaration were to run with the land for a thirty-year period and be automatically extended for successive ten-year periods "unless an instrument signed by at least two-thirds (2/3) of the then owners of the lots has been recorded, agreeing to change said covenants in whole or in part." The declaration did not provide another means of altering the uniform covenants and restrictions. *See Youssefzadeh v. Brown,* 131 S.W.3d 641, 645 (Tex.App.2004) (holding that attempt by private owner to unilaterally amend original declaration was invalid because it did not follow exclusive amendment procedure). The two-thirds vote applies when one wants "to *change* said covenants *in whole or in part.*" (Emphasis added.) Certainly, the purported restrictions on accessory buildings that Minnesota Title placed on thirty-two of the fifty-four homes were a "change . . . in part" of the 1973 Declaration.

¶ 16 The 1976 Private Deed Restrictions did not purport to amend the original covenants and restrictions; however, they effectively altered the terms pertaining to accessory buildings in the 1973 Declaration. Permitting developers to use private deed restrictions to bypass the formal amendment process would "destroy the right to rely on restrictive covenants" and "completely upset the orderly plan of the subdivision." *La Esperanza,* 142 Ariz. at 238, 689 P.2d at 181; *Riley,* 6 Ariz.App. at 526, 434 P.2d at 528.

¶ 17 The Multaris have not argued that the private deed restrictions somehow complied with the exclusive amendment procedure, and we find no evidence that two-thirds of the property owners approved of the 1976

Private Deed Restrictions. Further we reject the Multaris' argument that the 1976 Private Deed Restrictions did not change the entire "set" of covenants and restrictions as to all property owners. The Multaris' reliance on *Sea Watch Stores L.L.C. v. Council of Unit Owners of Sea Watch Condominium*, 115 Md.App. 5, 691 A.2d 750 (Spec.App.1997) is not persuasive. In that case, the council of unit owners, not the developers, placed private deed restrictions on several condominium units. *Id.* at 754 & n. 9. The court found that the council was exercising its statutorily granted rights to act as a private owner and was not engaged in an act of condominium governance. *Id.* at 758–60.[1] Here, Minnesota Title, either as or acting for the developer, placed similar restrictions on thirty-two of fifty-four lots. It effectively circumvented the amendment process.

¶ 18 We also do not find persuasive the argument that there has been no alteration to the 1973 Declaration as restrictions were not taken away, but only increased. The Multaris' argument was based in part upon *La Esperanza's* reliance on language in a New Mexico case that "to permit individual lots within an area to be *relieved* of the burden of such covenants . . . would destroy the right to rely on restrictive covenants." 142 Ariz. at 238, 689 P.2d at 181 (quoting *Montoya*, 473 P.2d at 365 (emphasis added)). We need not decide whether or not this is a limitation on the reach of *La Esperanza*. The language in the 1973 Declaration refers to an amendment being something that "*change[s]* . . . in whole or in part" the rights promised. Here, the rights have certainly been "change[d]," whether they add restrictions or delete them. Our opinion in *Riley*, in which we characterized an amendment as "any action taken by property owners to *alter*, extend, or revoke existing restrictions," further supports our decision. *Riley*, 6 Ariz.

App. at 525, 434 P.2d at 527 (emphasis added).

¶ 19 Accordingly, on the factual record here, we hold that the terms in the 1976 Private Deed Restrictions limiting the dimensions of structures on lot 285 are an invalid amendment to the 1973 Declaration.[2] Summary judgment in favor of the Gresses is appropriate as there are no contested issues of fact. In so holding, we note that this decision does not address the scenario in which a private property owner, instead of the developer acting on multiple lots, conveys property to a grantee and records private deed restrictions which may be different from those in the applicable uniform covenants and restrictions.

### III.

■ ¶ 20 Both parties have requested attorneys' fees associated with this appeal pursuant to A.R.S. § 12–341.01. The Multaris have also requested that we modify the trial court's award of attorneys' fees and costs based on A.R.S. §§ 12–341.01, 12–341, and the terms of the 1976 Private Deed Restrictions.

■ ¶ 21 "In any contested action arising out of a contract," we have discretion to award reasonable attorneys' fees to the "successful party." A.R.S. § 12–341.01(A). The awarding of costs to the successful party pursuant to A.R.S. § 12–341 is mandatory. *Trollope v. Koerner*, 21 Ariz.App. 43, 47, 515 P.2d 340, 344 (1973). In addition to the statutory entitlement to fees at the discretion of the court, the 1976 Private Deed Restrictions state that if an owner of lot 285 violated the private deed restrictions, the owner of lot 290 could sue to enjoin the violation "and to recover reasonable attorney's fees and costs."

---

1. *Sea Watch* also cites to *Eisenstadt v. Barron*, 252 Md. 358, 250 A.2d 85 (1969). In that decision the Maryland Court of Appeals also upheld a private deed restriction. *Id.* at 92. It is distinguishable from our circumstances as *Eisenstadt* does not indicate that similar private deed restrictions were imposed on large numbers of lots within a subdivision. Neither does *Eisenstadt* indicate that the amendment process must be used if the terms of the applicable covenants and

restrictions are "change[d] . . . in whole or in part," as is the circumstance here.

2. Because we resolve the merits of the case on the above grounds, we need not address the issue of whether the private deed restrictions were also invalid because they were not uniformly imposed on all lot owners. Nor do we need to address whether the private deed restrictions were an impermissible type of covenant.

¶ 22 The Multaris have not prevailed on appeal and we therefore deny their request under both § 12–341.01 and the 1976 Private Deed Restrictions for attorneys' fees associated with this appeal. Based on our holding on the merits, we further deny the Multaris' request to modify the trial court's award of fees and costs in their favor. We vacate that award. The Gresses have requested fees pursuant only to A.R.S. § 12–341.01, not the 1976 Private Deed Restrictions. In the exercise of our discretion, we deny the Gresses' fee request but award costs.

## IV.

¶ 23 For the foregoing reasons, we reverse the trial court's grant of summary judgment in favor of the Multaris and remand with instructions to enter judgment in favor of the Gresses.

CONCURRING: PATRICIA K. NORRIS, Presiding Judge and JON W. THOMPSON, Judge.

