A07A2329. WALKER et al. v. 90 FAIRLIE CONDOMINIUM ASSOCIATION, INC. et al.
(659 SE2d 412)

PHIPPS, Judge.

This case pits Cole and Ashley Walker, in their capacity as owners of unit 902 in the 90 Fairlie Condominium building, against 90 Fairlie Condominium Association, Inc., and its board of directors. The dispute concerns the condominium building's tenth-floor rooftop terrace, which adjoins the Walkers' penthouse unit. The Walkers claim that the bulk of the rooftop terrace is a "limited common element" reserved for their exclusive use. The association and board claim that most of the terrace is a "common element" reserved for the use of all unit owners. The parties filed cross-motions for partial summary judgment on this issue. The Walkers appeal the trial court's grant of the association and board's motion. We affirm.

The condominium building consists of eighteen residential units, three business units, the common elements, the limited common elements, and one commercial unit. 90 Fairlie, LLC ("90 Fairlie") was the original owner and declarant of the condominium. Cole Walker was 90 Fairlie's managing member. Attached to the condominium declaration and incorporated therein is a floor plan for the tenth-floor rooftop terrace. The tenth-floor rooftop terrace, along with an eleventh-floor elevated roof deck, comprise the bulk of the condominium roofing. The floor plan attached to the declaration designates most of the tenth-floor rooftop terrace as a common element; only a small portion of the terrace immediately adjacent to unit 902 is designated as a limited common element assigned to unit 902. As found by the trial court, however, the floor plan reflects that most of the terrace is surrounded by a gated fence and is a "no build area subject to [a] facade easement."

Shortly after the declaration was recorded, the Walkers purchased unit 902 from 90 Fairlie. Prior to the Walkers' purchase, 90 Fairlie installed guardrail fencing and a locked gate around the bulk of the terrace restricting access to anyone other than residents or guests of unit 902. The Walker purchase agreement incorporates a floor plan that describes the entire fenced area of the tenth-floor rooftop terrace as a limited common element assigned for the exclusive use of unit 902.

The Walkers acknowledge that in marketing the condominium units, Cole Walker informed prospective purchasers that they would have access to the tenth-floor rooftop terrace. But it is undisputed that applicable building and safety codes limit the amount of space that can be occupied on the rooftop to 750 square feet and require the fence and gate to guide the users of this space to the exit. According to Walker, the condominium building plans were revised to comply with these requirements and to exhaust the 750 square feet of usable space by designating an eleventh-floor roof deck, rather than the tenth-floor rooftop terrace, as a limited common element usable by all residential and business units.

After the Walkers' purchase of unit 902, the association through counsel advised Ashley Walker that, in accordance with the declaration, the bulk of the tenth-floor rooftop terrace was not the exclusive property of the Walkers and demanded that she immediately remove the locked gate which restricted the association's access. After having sold all of the residential and business units in the building, but before divesting itself of ownership of the commercial unit, 90 Fairlie recorded an amendment to the declaration in which it changed the designation of the fenced area of the tenth-floor rooftop terrace from a previously unassigned common element to a limited common element for the exclusive use of the owners of unit 902. The board later began making claims that the tenth-floor rooftop terrace is a common element belonging to the association (and apparently removed the fencing and locked gate). The Walkers eventually moved out of unit 902 and listed the unit for sale.

Because the board's actions constitute a cloud on their title, the Walkers brought this suit seeking damages, declaratory judgment, and injunctive relief against the association and board. The association and board answered the complaint and filed a counterclaim, seeking their own damages, declaratory judgment, and injunctive relief. The association and board moved for partial summary judgment on the issue of whether the disputed portion of the tenth-floor rooftop terrace is a common element. The Walkers filed a cross-motion for summary judgment on issues concerning the status of the tenth-floor rooftop terrace and the necessity for the perimeter fence and locked gate.

## Trial Court's Order

The trial court concluded that 90 Fairlie lacked the authority to amend the declaration to designate the bulk of the tenth-floor rooftop terrace as a limited common element reserved for the exclusive use of unit 902, because (1) the floor plan incorporated into the declaration designated this area as a common element for the enjoyment of all unit owners; and (2) under *Armstrong v. Roberts*[1] and *Frazier v. Deen*,[2] 90 Fairlie could not effect a unilateral amendment to the declaration after having sold all of the units in the condominium.[3] Consequently, the court granted the association and board's motion for partial summary judgment on the issue of whether the disputed portion of the tenth-floor rooftop terrace is a limited common element.

Because the guardrail fence surrounding the tenth-floor rooftop terrace is reflected on the original floor plans of the declaration and is required by the applicable building and safety codes, however, the court ordered the association to reinstall the fence and locked gate — with the common element area of the tenth-floor roof terrace accessible to the association for maintenance purposes only, unless and until the association can satisfy all code requirements for use of the space. The court thus granted the Walkers' motion for partial summary judgment on the issue of whether condominium unit owners have a present general right of access to the disputed portion of the tenth-floor rooftop terrace.

The Walkers have appealed the trial court's partial grant of the board and association's motion. The board and association have not cross-appealed the court's partial grant of the Walkers' motion.

## Elements and Limited Common Elements under the Georgia Condominium Act

Under the Georgia Condominium Act ("the Act"),[4] " '[c]ommon elements' means all portions of the condominium other than the units."[5] " 'Limited common element' means a portion of the common elements reserved for the exclusive use of those entitled to the use of one or more, but less than all, of the units."[6] Although the Act requires the declaration to allocate to each unit an undivided interest in the

---

[1] 254 Ga. 15 (325 SE2d 769) (1985).

[2] 221 Ga. App. 153 (470 SE2d 914) (1996).

[3] The record shows, however, that although 90 Fairlie had sold all of the business and residential units in the condominium, it had retained ownership of the commercial unit.

[4] OCGA § 44-3-70 et seq.

[5] OCGA § 44-3-71 (4).

[6] OCGA § 44-3-71 (19).

common elements, all such interests are subject to reallocation as provided in the Act.[7] OCGA § 44-3-82 (c) provides that "[a] common element not previously assigned as a limited common element" may be assigned as a limited common element, but only pursuant to the declaration and through an amendment to the declaration prepared and executed by the association. OCGA § 44-3-82 (c) further provides that unless otherwise required by the condominium instruments, no vote of the unit owners is necessary for the amendment executed by the association.

### *Declaration of Condominium for 90 Fairlie Condominium*

The pertinent provisions of the declaration are section 5 (governing the common elements) and section 6 (governing the limited common elements).

Section 5 generally grants each owner the right to use the common elements "for the purposes for which they are intended" and further provides that the common elements "shall remain undivided, and no owner nor any person shall bring any action for partition or division of the whole or any part thereof except as provided in the Act."

Under section 6 (a) (i), "any roof terrace" which is "shown on the floor plans" as "adjoining a single unit" is "assigned as a limited common element to the unit to which it is connected." Section 6 (a) (v) assigns a "common roof deck" as limited common elements to the residential and business units. (Under section 14 (d), owners, occupants, or invitees of the commercial unit are prohibited from using the roof deck without the prior consent of the board.)

Section 6 (b) authorizes the association's board of directors, without need for a membership vote, to assign and reassign limited common elements in accordance with the provisions of OCGA § 44-3-82 (b) and (c). As to common elements, section 6 (b) further provides:

> A common element not previously assigned as a limited common element may be so assigned . . . upon written application to the association by the unit owner or owners for whose exclusive use such common element is requested. . . . An amendment to assign a common element, not previously assigned as a limited common element shall not require the approval of the association or the board, if the request is made by the declarant or its affiliate.

---

[7] OCGA § 44-3-78 (a), (b).

## Cases Cited by Trial Court

In *Armstrong*,[8] our Supreme Court adopted the rule that "[a] developer of a subdivision who reserved the authority to waive restrictions in covenants running with the land no longer possesses that authority after divesting himself of his interest in the subdivision."[9] In *Frazier*,[10] we applied the *Armstrong* rule.

## Appeal

1. The Walkers argue that the tenth-floor rooftop terrace floor plan attached to the declaration depicts the fenced area of the terrace as adjoining and only accessible from unit 902, so that this entire area became a limited common element pursuant to section 6 (a) (i) of the declaration.

For two reasons, we cannot agree. First, the floor plan's depiction of the area as fenced or gated does not necessarily mean that the area was not accessible to residents of units other than unit 902; gated fencing can be accessed by authorized users with a key or code. Second, the floor plan expressly assigns the bulk of the tenth-floor rooftop terrace as a common element except where assigned as a limited common element, and the only part of the terrace assigned as a limited common element is a small portion of the fenced area immediately adjacent to unit 902. According to the association and board, this area consists of unit 902's patio.

It is true that the tenth-floor rooftop terrace's floor plan depicts most of the area as a "no build area subject to the facade easement[,]" and that section 5 of the declaration only grants owners the right to use common elements "for the purposes for which they are intended." Therefore, the declaration clearly did not intend a deck for the use of unit owners to be built on the tenth-floor rooftop terrace. And it does appear that an elevated roof deck benefitting all residential and business units was built in the 750 square feet of usable space on the eleventh floor of the building. Nonetheless, by its express terms, the original declaration designates the bulk of the tenth-floor rooftop terrace as a common element.

2. The Walkers claim that the declarant's amendment to the declaration assigning the entire fenced area of the tenth-floor rooftop terrace to unit 902 as a limited common element was authorized under that part of section 6 (b) of the declaration that allows the

---

[8] Supra.
[9] 254 Ga. at 16.
[10] Supra.

declarant to amend the declaration to assign a common element not previously assigned as a limited common element without the approval of the association or board. We disagree.

To the extent that section 6 (b) of the declaration purports to grant such authority to the declarant, it conflicts with that part of section 5 of the declaration requiring the common elements to remain undivided. Ambiguities in the declaration must be construed against the drafter.[11] Section 6 (b) also runs afoul of that part of OCGA § 44-3-82 (c) that requires such an amendment to the declaration to be prepared and executed by the association. In the event of any inconsistency between the Act and the declaration, the Act controls.[12] Although the declarant may have had the effective unilateral authority to amend the declaration when it controlled the association,[13] it is undisputed that control had ended by the time the declarant sought to amend the declaration to assign the entire fenced area of the tenth-floor rooftop terrace as a limited common element benefitting only unit 902.

3. Finally, we note that *Armstrong* adopts what is essentially a common law rule applicable to subdivision restrictive covenants. This case involves a condominium declaration. Whether a condominium declarant can retain authority to amend the declarations after divesting itself of ownership in the condominium is a question controlled by the Act.[14]

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED MARCH 7, 2008.

*Schulten, Ward & Turner, David L. Turner, Dean R. Fuchs*, for appellants.

*Weinstock & Scavo, Marvin P. Pastel II, Wallace H. Ehrenclou*, for appellees.

---

[11] See generally *L & B Constr. Co. v. Ragan Enterprises*, 267 Ga. 809, 811 (482 SE2d 279) (1997).

[12] OCGA § 44-3-75 (c).

[13] See OCGA §§ 44-3-93; 44-3-101.

[14] See n. 10, supra.