6 A.3d 1117 (2010)
2010 VT 37
Richard MADOWITZ and Douglas Kohl
v.
THE WOODS AT KILLINGTON OWNERS' ASSOCIATION.
No. 08-502.
Supreme Court of Vermont.
July 2, 2010.
*1118 Alan P. Biederman of Biederman Law Office, Rutland, and L. Maxwell Taylor, Middlebury, for Plaintiffs-Appellees.
Jon S. Readnour of Readnour Associates, P.C., Rutland, for Defendant-Appellant.
Present: DOOLEY, JOHNSON, SKOGLUND and BURGESS, JJ., and JOSEPH, D.J., Specially Assigned.
JOHNSON, J.
¶ 1. This interlocutory appeal arises out of a dispute over development rights at the Woods at Killington condominium complex (the Woods) in Killington, Vermont. An association of condominium unit owners located at the Woods (the Association) appeals from a decision by the Rutland Superior Court granting summary judgment in favor of developers Richard Madowitz and Douglas Kohl, who are seeking to further develop the project without obtaining written consent from each unit owner. The question on appeal is whether developers' rights to develop the Woods have expired because of a durational limitation on development rights contained in most of the deeds and two separately executed powers of attorney. We conclude that because the declaration cannot be altered solely by individual deed or private agreement, developers' rights to develop the Woods have not expired and that the superior court was correct in granting summary judgment in favor of developers.
¶ 2. The Woods is a condominium development created by a declaration of condominium filed on July 25, 1985. By the terms of the declaration, the developer intended at the outset to add more units than existed at the time the declaration was filed. These additional units were to be added in phases. The condominium ownership statute in effect at the time of the 1985 declaration provided that each unit owner be conveyed an "undivided interest in the common areas and facilities" and required that the declaration include "the percentage of undivided interest in the common areas and facilities appertaining to each [unit] and its owner for all purposes, including voting." 27 V.S.A. §§ 1306(a), 1311(6).[1] The original statute provided that, once the percentage of undivided interest was declared in the declaration of condominium, it had a "permanent character and shall not be altered without the consent of all of the apartment owners expressed in an amended declaration." Id. § 1306(b). To meet the requirements of § 1306(b), the 1985 declaration included a limited power of attorney provision as a way for unit owners to give prior consent for the developer to amend the declaration to change the unit owner's percentage of undivided interest (e.g., by adding additional units). The same provision for a limited power of attorney also appears in the amended 1988 declaration.
¶ 3. In 1985, the original developer began conveying condominium units to individual owners and conveyed two units that *1119 year. Starting in 1986, the condominium deeds included language expressly limiting the extent of the power of attorney given from grantees to grantor, stating that such power shall expire in ten years. A total of 107 units were conveyed by the original developer, of which 105 contained the ten-year limitation on consent to future development. In addition, in 1986, two unit owners executed separate limited powers of attorney consenting to future development. These two powers of attorney each contained a provision similar to the one that appeared in the condominium deeds, limiting the scope of the consent to future development to ten years. Thus, a pronounced conflict arose between the original declarationgranting developers the unit owners' consent to future development that would alter the owners' undivided interest in the common areasand the latter powers of attorney and two deedsessentially removing this consent after ten years.
¶ 4. After the original developer was unable to stave off foreclosure, Probos, Ltd. acquired development rights.[2] Probos subsequently conveyed development rights to developers in June 1994. Shortly thereafter, developers filed for an amendment to an existing Act 250 permit to extend the construction completion date to January 1, 2000. The proposed amendment concerned only the completion date and did not alter any substantive development plans. The amendment was granted in June 1995. The Association did not take part in this proceeding. Just prior to the January 1, 2000 deadline, developers applied for another amendment to the Act 250 permit, seeking to extend the completion of construction by another five years. The Association was not joined as a co-applicant, but during the proceeding the Association argued that developers did not have rights to develop the Woods project because the ten-year limitation in the earlier unit owner deeds had begun to expire.
¶ 5. The district commission denied the amendment application, finding that developers had failed to show that they had adequate rights to develop and had not overcome the requirement that they show good cause to waive co-applicancy of the Association. The commission found that "[t]he very heart of the dispute between the Association representing the current condominium owners and the Permittee is whether the Declaration, as it is now in force, permits the Permittee to proceed with the final phase of the Project." Developers subsequently filed a complaint in Rutland Superior Court seeking damages and declaratory judgment. Developers argued that the Association breached its obligations under the declaration and interfered with developers' rights by participating in the Act 250 proceedings. Developers also sought declaratory relief defining the extent of their development rights.
¶ 6. The Association filed a motion for summary judgment, arguing that: (1) developers' *1120 rights had expired because of the ten-year limitation found in 105 deeds and two separately executed powers of attorney; (2) the power of attorney and consent provisions contained in the declaration are unenforceable because they violate 27 V.S.A. § 1306 and, alternatively, the provisions are personal to the original developer and are unenforceable by successor developers; and (3) the Association was not liable to developers for damages arising out of its successful challenge to their development rights made during the Act 250 proceeding. Developers filed a cross-motion for summary judgment, arguing that the liability issue should be decided in their favor.
¶ 7. The superior court granted partial summary judgment for developers. The court concluded that the power of attorney and consent provisions of the original and amended declarations were enforceable and that these provisions did not require specific written consent or a power of attorney to be executed by each unit owner at the time of a reduction in fractional interest (e.g., at the time of construction of additional units). With respect to the ten-year limitation on unit owners' consent contained in 105 of the 107 deeds, the court found that this provision was unenforceable as it would conflict with the express and unambiguous provisions of the declaration. The court also rejected the Association's argument that the powers of attorney and consent provisions contained in the declaration were personal to the original developer and could not be transferred to successor developers, concluding that nothing in the declaration indicated this was the case and that to imply an inability to transfer these rights "simply makes no sense from a business and economic standpoint." Finally, the court found in favor of the Association with regard to its cross-motion for summary judgment, concluding that the Association was not liable to developers for its participation in the Act 250 proceeding.[3]
*1121 ¶ 8. The Association moved for interlocutory appeal pursuant to Vermont Rule of Appellate Procedure 5(b). The sole issue before us on appeal is whether the development rights created under the declaration can be cut off by the ten-year durational limitation on development rights created by 105 deeds and two separately executed limited powers of attorney. We conclude that a declaration cannot be amended in this way.
¶ 9. We review a motion for summary judgment de novo under the same standard of review as the trial court. We have held that "summary judgment is appropriate only when the record clearly shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Bacon v. Lascelles, 165 Vt. 214, 218, 678 A.2d 902, 905 (1996); accord V.R.C.P. 56(c)(3).
¶ 10. The Association advances two arguments in support of its contention that developers' right to develop the Woods without individual consent from each unit owner has expired or is in some way unenforceable. First, the Association maintains that the ten-year limitation found in 105 condominium deeds and two separately executed powers of attorney is enforceable and can be read harmoniously with the declaration. The Association contends that the consent that unit owners gave to the developer to make additions to the Woods that would alter the unit owners' percentage interest in the common areas was limited to ten years. After that ten years, the Association argues, the developer needed to obtain individual consent from each unit owner to proceed with additions that would alter the percentage interest. Second, the Association argues that 27 V.S.A. § 1306(b) prohibits developers from relying on the general consent given in the declaration and requires individual powers of attorney from each unit owner.
¶ 11. The threshold question at the heart of the Association's claims is whether the ten-year limitation contained in 105 deeds and two separately executed powers of attorney altered or amended the original and amended declarations. The Association contends, and the dissent agrees, that the declaration, deeds, and separate powers of attorney can be read harmoniously. The Association argues that the declaration languageparticularly language granting the developer power to amend the declaration as "necessary and incidental to altering the percentage of undivided interest pursuant to 27 V.S.A. *1122 § 1306(b)"evidences an intent that execution of individual powers of attorney from each unit owner was necessary for the developer to alter the percentage interest of each unit owner as new units were added. Alternatively, the Association contends that this declaration provision is ambiguous and that we should resolve the ambiguity by examining the ten-year limitation found in 105 deeds and two separately executed powers of attorney to ascertain the parties' intent to limit the consent given.
¶ 12. The Association's arguments notwithstanding, we fail to see how these provisions can be read harmoniously. When construing a contract, we must look to the intent of the contracting parties, "which we presume is reflected in the contract's language when that language is clear." R & G Props., Inc. v. Column Fin., Inc., 2008 VT 113, ¶ 17, 184 Vt. 494, 968 A.2d 286 (quotation omitted). Though we consider an agreement as a whole when examining individual provisions, we will not insert "[v]aguely implied conditions..., particularly when those conditions are inconsistent with the express language of the agreement." Downtown Barre Dev. v. C & S Wholesale Grocers, Inc., 2004 VT 47, ¶ 9, 177 Vt. 70, 857 A.2d 263. Moreover, "[w]hile we may consider the circumstances surrounding the making of the agreement in determining whether its provisions are ambiguous, those circumstances may not be used to vary the terms of an unambiguous writing." Id. ¶ 8 (quotation omitted).
¶ 13. Starting first with the declaration, the unambiguous language explicitly grants to developers the necessary consent of each unit owner to additions to the development that would result in a change in each owner's percentage interest in the common areas and facilities.[4] The original 1985 declaration explicitly set forth the developer's intent to "construct Residential and limited Commercial Units in Phases." Because each unit owner was granted an undivided percentage interest in the common areas and facilities of the Woods, the declaration provided that the designated value of each unit would change upon completion of each subsequent phase of development. The final schedule of percentage interests was to be filed in the Sherburne Land Records upon completion of the development project.
¶ 14. Pursuant to 27 V.S.A. § 1306(b), however, a developer needed consent from each unit owner before he could alter the percentage of undivided interest held by each owner:
The percentage of the undivided interest of each apartment or site owner in the common areas and facilities as expressed in the declaration shall have a permanent character and shall not be altered without the consent of all of the apartment or site owners expressed in an amended declaration duly recorded.
*1123 Instead of procuring consent from each unit owner prior to each and every addition to the development, to comply with § 1306(b), the developer included the following provision in the original 1985 declaration as a way to obtain prior consent from each unit owner:
[B]y acceptance of deeds of their Units, Unit Owners shall be deemed to have designated and appointed Declarant as their attorney in fact for the sole, limited and exclusive purpose of amending this Declaration in accordance with this section, so that an Amendment filed by Declarant pursuant hereto shall result in the amendment and reduction of such fractional interest without further action or consent by Unit Owners ....
This provision effectively provided unit owners' consent to future project additions that would result in reductions of each owner's percentage interest in the common areas.[5] The amended 1988 declaration contained a similar consent provision. In addition, the 1988 amended declaration added a provision stating that when the developer determines that construction on the development is complete, he shall file an amendment to the declaration to be executed no later than June 30, 2005.[6] Pursuant to the rights reserved under the declaration, the developer amended the declaration several times, most often to reflect adjustments to the schedule of percentage interests of each unit owner.[7]
¶ 15. Thus, the unambiguous language of the declaration and amended declaration explicitly gave developers the right to continue with their phased development plans. No further contracts or agreements were necessary to effect the intent of the parties that the developers continue phased development of the Woods and that the percentage interest of each unit owner in the common areas be altered to reflect additions to the project. See Downtown Barre Dev., 2004 VT 47, ¶ 9, 177 Vt. 70, 857 A.2d 263 ("Vaguely implied conditions may not be inserted into an agreement, particularly when those conditions are inconsistent with the express language of the agreement."); Hill v. City of Burlington, 157 Vt. 241, 245, 597 A.2d 792, 794-95 (1991) (holding that isolated references to contract conditions unenforceable because "a vague implication of rights cannot prevail over the clear and express provisions of [the contract]").
*1124 ¶ 16. The Association, however, relies on the following additional documents in support of its contention that, despite the language of the declaration, the parties intended to limit development rights and that the development rights at the Woods have expired: (1) a deed provision found in 105 of the 107 conveyances from the original developer to unit owners; and (2) powers of attorney executed by two unit owners. Both provisions place a limit on the duration of unit owners' consent to additional units and development phases. The deed provision states:
By acceptance of this deed, the Grantees... consent to the amendment of the Declaration of Condominium for the purpose of adding additional units, buildings, lands, Limited Common Areas, Common Areas and Facilities, and the resulting alteration of the percentages of undivided interest in accordance with the Declaration and as set forth in a Limited Power of Attorney from Grantees to Grantor. This consent shall inure to the benefit of and shall burden the Grantees' heirs and assigns, shall run with the land, and shall expire its terms 10 years from the date hereof.
Similar language is found in powers of attorney separately executed by two unit owners:
[Declarant is granted power to] [e]xecute, acknowledge and deliver on our behalf any and all instruments, including an amended Declaration of Condominium and Schedules thereto, necessary and incident to altering the percentage of undivided interest pursuant to 27 V.S.A. Section 1306(b), in the event the Declarant ... expands the condominium to include additional lands, buildings, units, Common Areas and Facilities, and appurtenances thereto in accordance with said Declaration.... This Limited Power of Attorney ... shall expire by its terms ten years from the date hereof.
¶ 17. Despite the Association's claims to the contrary, the declaration provisions do not contemplate the added step of execution of individual powers of attorney from each unit owner. Indeed, the fact that only two such powers of attorney were actually executed is strong evidence against such intent. Moreover, the declaration provisions directly conflict with the ten-year limitations found in 105 of the 107 deeds of condominium and two separately executed powers of attorney. Further, the first ten-year limitation, which appears in a 1986 deed, would by its terms expire in 1996, nine years before the 2005 development cut-off date contained in the 1988 amended declaration. Inclusion of the 2005 cut-off date in the amended declaration evidences an unambiguous intent that the consent to development will end in 2005, an intent that is at odds with the Association's argument that the declaration and amended declaration can be read harmoniously with the ten-year cut-off provision found in the deeds and powers of attorney. There is simply no harmonious way to read these conflicting provisions, and we will not inject ambiguity into otherwise unambiguous provisions. See Downtown Barre Dev., 2004 VT 47, ¶ 9, 177 Vt. 70, 857 A.2d 263.
¶ 18. The dissent argues that we should rectify the obvious conflict between the declaration, deeds, and powers of attorney, by construing them as "interconnected documents" that are read as one. Post, ¶ 38. Though there may be instances where this tool of contract construction is warranted, the obvious and irreconcilable conflicts between the documents here foreclose such a construction without opening up the possibility that every declaration can be unilaterally amended by deed. Because we cannot construe these three separately *1125 executed documents as one, for the Association to succeed, we would have to conclude that the deed and powers of attorney provisions altered the terms of the declaration and are enforceable in spite of the declaration's provisions.
¶ 19. Though we have not specifically addressed a situation in which a declaration is at odds with a subsequent deed, we agree with the superior court that allowing the declaration to be effectively changed by individual deed "would undermine the concept of a common interest community." The court relied on Multari v. Gress, 214 Ariz. 557, 155 P.3d 1081 (App.2007), for the proposition that a developer may not utilize restrictions contained in private deeds to multiple lots to alter the uniform covenants and restrictions contained in a declaration that was otherwise applicable to those lots. We find the analysis in Multari persuasive. In Multari, the Arizona Court of Appeals addressed whether private deed restrictions that eliminated certain restrictive covenants found in the original declaration regarding size and dimensions of buildings were enforceable. The court concluded that "[p]ermitting developers to use private deed restrictions to bypass the formal amendment process would destroy the right to rely on restrictive covenants and completely upset the orderly plan of the subdivision." Id. at 1083 (quotations omitted).
¶ 20. The Association urges us to distinguish Multari on the grounds that Multari involved a subdivision as opposed to a condominium project, and the restrictive covenants in Multari involved land-use restrictions as opposed to project duration restrictions. We find these arguments unpersuasive. The Association points out that Multari was decided based on common law principles and did not involve the condominium statute at issue here, but fails to assert a reason why the Vermont condominium statute necessitates a different outcome. There is nothing in the condominium statute indicating legislative intent for deed restrictionseither involving allowable uses or project durationto trump a declaration. Nor is there a principled reason to distinguish a project-duration provision limiting consent to changes in undivided interest in common areas from a land-use provision. Indeed both types of provisions are explicitly required in any condominium declaration. 27 V.S.A. § 1311; id. § 1306(b).
¶ 21. The dissent appears to credit the Association's argument that Multari is distinguishable, contending that because the case before us is "a dispute between the owners, aligned with the owners' association, and developers" rather than a dispute between owners over enforcement of use and occupancy provisions, a decision allowing the deed to trump the declaration in this case would protect rather than thwart a common interest community. Post, ¶ 33. This distinction, however, does not change the analysis or the result. Whether the dispute is between a group of owners and a developer, or between one owner and another owner, we are still left with the problem of a conflict between a deed and a declaration. There is simply no principled way to allow the deeds to trump the declaration in this case without allowing it in all cases. Indeed, it is not hard to imagine a situation where a declaration does not just differ from one provision in only two deeds, but differs from multiple and inconsistent provisions among all of the deeds. This latter situation, in which multiple deeds vary from both each other and the declaration, is exactly the threat to common interest communities that the Multari court sought to avoid. See 155 P.3d at 1083.
¶ 22. Nonetheless, the Association claims that the "ironic result" of our application *1126 of the analysis used in Multari is to use an owner-protection principle to thwart protection of unit owners at the Woods who may have relied on the ten-year limitations found in their individual deeds. Though we agree with the Association that there is something troubling about the discrepancy between the declaration and the deeds and powers of attorney, the appropriate action cannot be to disregard the declaration. Such an action would infuse uncertainty into future condominium projects as declarationsthough meant to be "master deeds"could be easily and inconsistently amended by individual deed.[8]
¶ 23. Our sister courts agree that a declaration or "master deed" effectively trumps individual deed restrictions. In Ridgely Condominium Ass'n, Inc. v. Smyrnioudis, for instance, the Maryland Court of Appeals noted that "[i]f there is any conflict between the provisions of the various documents governing the condominium, the statute controls, then the declaration, plat, bylaws, and rules in that order." 343 Md. 357, 681 A.2d 494, 496 (1996). The court held that it was thus beyond the power of a condominium association to alter property rights provided under the declaration through a bylaw amendment. Id. at 501; see also Thompson v. Ebbert, 144 Idaho 315, 160 P.3d 754, 756-57 (2007) (concluding that a declaration "is essentially a master deed which defines the rights and duties of the developer, the owners of the individual condominium units and the management body of the project" and that conveyances by individual unit owners that violate provisions of the declaration will not stand (quotation omitted)); CBK Brook House I Ltd. P'ship v. Berlin, 64 Mass.App.Ct. 913, 834 N.E.2d 1251, 1253 n. 4 (2005) ("It is the master deed that prescribes the rules of the game, and each unit owner's interests are subject to the limitations set forth in the master deed and the condominium bylaws." (quotations omitted)); Reyhani v. Stone Creek Cove Condo. II Horizontal Prop. Regime, 329 S.C. 206, 494 S.E.2d 465, 469 (App. 1997) (holding that subsequent agreement between a developer and homeowners' association that altered property rights contained in the original master deed was void because it was "not assented to by the condominium unit owners, nor effected by an amendment to the Master Deed"). Indeed, to hold otherwise would greatly diminish the effectiveness of the declaration in creating a common interest community, as the community could be easily changed by individual deed restrictions. See 27 V.S.A. § 1311(1), (7), (11) (requiring declaration to contain detailed description of the property, "[s]tatement of the purposes for which the building and each of the apartments are intended and restricted as to use," and method by which the declaration may be amended).
¶ 24. Similarly, here, where the declaration provisions, subsequent deeds and separately executed powers of attorney point in opposite directions, the declaration must prevail. The only way to put in place a durational limit on the unit owners' prior consent to developers' phased development plans was by formal amendment to the declaration. Moreover, we emphasize that the deed holders were at all times on constructive notice of developers' rights as those rights were set forth in the declaration, which must be filed in the land records. A title search would have revealed any inconsistencies between the declaration and subsequent deeds and powers of *1127 attorney. Wherever the blame lies for the inconsistent instruments, the only solution that makes practical, as well as legal, sense is to prefer the declaration over the inconsistent deeds and powers of attorney. In the absence of any formal amendment providing otherwise, the consent given by unit owners to the developer to continue the phased development of the Woods has not expired.
¶ 25. Next, the Association contends that 27 V.S.A. § 1306(b) prohibits a developer from obtaining prior consent to future development that would alter the undivided percentage interests held by unit owners without executing a separate power of attorney. Section 1306(b) provides the following:
The percentage of the undivided interest of each apartment or site owner in the common areas and facilities as expressed in the declaration shall have a permanent character and shall not be altered without the consent of all of the apartment or site owners expressed in an amended declaration duly recorded.
¶ 26. The Association's arguments notwithstanding, the plain language of § 1306(b) does not contemplate a bar on procurement of prior consent through embedding the power of attorney in the declaration. Ignoring the plain language of § 1306(b), the Association turns instead to 27 V.S.A. § 305, which governs conveyances effected through a power of attorney and provides that "[a] deed or other conveyance of lands ..., made by virtue of a power of attorney, shall not be of any effect ... unless such power of attorney is signed, witnessed by one or more witnesses, acknowledged and recorded." The Association contends that, in accordance with § 305, if the original developer wanted to obtain consent for development, he had to execute and record a power of attorney rather than embed a consent provision in the declaration.
¶ 27. The Association's reliance on § 305 is misplaced. This statute addresses conveyances of lands or other property. Here, the declaration provisions do not allow developers to convey the unit owners' real estate. Although the addition of each new unit divided the percentage interest in the same common areas among a greater number of people, there was no real or practical change in any unit owner's rights or expectations with respect to his use of the common areas or his own unit. Instead, through the declaration, unit owners gave limited consent for developers to amend the declaration as they proceeded with a phased development plan to reflect each new change in the unit owners' undivided interests in the common areas and facilities. Though 27 V.S.A. § 1306 was later amended to prohibit the practice of obtaining prior consent to development in this manner,[9] there is simply no way to construe § 1306, as it appeared at the time the deeds of condominium were conveyed, as prohibiting this practice.[10]
Affirmed.
DOOLEY, J., dissenting.
¶ 28. The flaw in the majority's decision and rationale lies in its statement, "we *1128 agree with the Association that there is something troubling about the discrepancy between the declaration and the deeds and powers of attorney." Ante, ¶ 22. Rather than acting on what it finds troubling, the majority enables developers to perpetrate a consumer fraud on the condominium purchasers, ironically all in the guise of implementing the Vermont Condominium Ownership Act, which, at its heart, is a consumer protection statute. Cf. Am. Condo. Ass'n, Inc. v. IDC, Inc., 844 A.2d 117, 128 (R.I.2004) ("The Rhode Island Condominium Act is a consumer protection statute."). The majority does so by treating this case as if it were like the out-of-state decisions upon which it reliesthat is, as if this case involved a conflict between condominium unit owners, or between unit owners and the condominium owners' association, over the use and occupancy of property. Instead, this is a conflict between the condominium owners and developers, part of the "rough and tumble that comes with the territory of ... development rights." In re Northwood Props., LLC, 356 B.R. 81, 89 (D.Mass.2006), rev'd, 509 F.3d 15 (1st Cir.2007). This awareness should affect the resolution of this case and allow the condominium owners to prevail on their claim that developers cannot dilute their share of the common area without their consent. I therefore dissent from the majority's conclusion to the contrary.
¶ 29. The two determinative provisions are as follows. First, the declaration provision states:
[B]y acceptance of deeds of their Units, Unit Owners shall be deemed to have designated and appointed Declarant as their attorney in fact for the sole, limited and exclusive purpose of amending this Declaration in accordance with this section, so that an Amendment filed by Declarant pursuant hereto shall result in the amendment and reduction of such fractional interest without further action or consent by Unit Owners ....
The second provision is found in the deeds of condominium, as well as in substance in the powers of attorney, and reads:
By acceptance of this deed, the Grantees... consent to the amendment of the Declaration of Condominium for the purpose of adding additional units, buildings, lands, Limited Common Areas, Common Areas and Facilities, and the resulting alteration of the percentages of undivided interest in accordance with the Declaration and as set forth in a Limited Power of Attorney from Grantees to Grantor. This consent shall inure to the benefit of and shall burden the Grantees' heirs and assigns, shall run with the land, and shall expire its terms ten years from the date hereof.
The language in these provisions gives rise to a number of points that should be noted here at the outset. First, the provisions are obviously interrelated because they are triggered by the exact same actacceptance of the condominium unit deed. Further, the language of the deeds refers specifically to "the Declaration" with respect to the alteration of the undivided interests in the common areas.[11] Finally, and most importantly for both the majority and this dissent, only the deed contains a temporal provision with respect to the unit owner's consent.
¶ 30. Also critical in this case, as stated in the majority's opening paragraph, is that, unlike the cases that the majority relies upon, this is a dispute between all or *1129 virtually all of the condominium unit owners and developers.[12] It is unrelated to the use and occupancy of the existing condominiums. Instead, it is related solely to the power of developers to build new condominium units without the consent of certain unit owners.
¶ 31. The trial court and the majority both adopt the view that the provision in the declaration is irreconcilably inconsistent with the provisions in the deeds,[13] and that the declaration trumps and precludes enforcement of the time limit in the deeds. I accept that the declaration would normally trump the provisions of the deeds, although not necessarily in the context of this case, but would hold that here the deed and declaration provisions must be reconciled to give effect to the time limit.
¶ 32. The majority cites a number of cases for the proposition that the declaration trumps the deed provisions, but does not specify the source of the law underlying these cases. Indeed, none of the cited cases involve conflicts between unit deeds and condominium declarations. I acknowledge, however, that the trumping rule proposition is generally provided for in the Vermont Condominium Ownership Act and that here we are enforcing that Act. See generally 27 V.S.A. §§ 1301-1329.[14] Specifically, the Act references the various documents that control condominium ownership: "Each apartment owner shall comply strictly with the bylaws and with the administrative rules adopted under them, as either may be lawfully amended from time to time, and with the covenants, conditions and restrictions set forth in the declaration or in the deed to his apartment." Id. § 1307. The Act specifies the required content of the declaration, id. § 1311, and provisions on phasing and development of additional units, or powers of attorney are not included among that required content. The statute does, however, allow the developer to put in the declaration "[a]ny further details in connection with the property which the person executing the declaration may consider desirable to set forth consistent with this chapter." Id. § 1311(10). One could argue that a provision on phasing and the development of additional units could be viewed as one of these "details."[15] Similarly, the Act specifies the required content of the unit deeds, without mentioning any provisions with respect to further development of new condominium units, and also allows "further details which the grantor and grantee may consider desirable to set forth consistent with the declaration and [the Act]." Id. § 1312(5) (emphasis added). If the majority's conclusion that the terms of the declaration trump the deed is correct, *1130 it is because of the consistency requirement in this latter statutory provision.
¶ 33. While I acknowledge the statutory consistency requirement, I want to be clear that the absence of consistency in this case would not "diminish the effectiveness of the declaration in creating a common interest community," as the majority fears. Ante, ¶ 23. Creating a common interest community may be the general purpose of a consistency requirement, but it is not applicable to this dispute. If this litigation sought to enforce use and occupancy provisions contained in a deed and different from those in a declaration, the consequence specified by the majority would occur. But this is a dispute between the owners, aligned with the owners' association, and developers. The condominium declaration is being used as a weapon against the common interest community, not in support of it.
¶ 34. The majority argues that the difference between the parties in this case and those in others where condominium owners are in litigation with each other or where the association is litigating against an owner, is irrelevantthat we must be consistent about whether a declaration provision is trumped by a deed provision, even when the declaration is being used as a weapon against a common interest community. This point is apparently why the majority recognizes that its result is "troubling," but it inflicts that trouble nonetheless. The majority is wrong in this case.
¶ 35. Plaintiffs seek declaratory relief to prevent the Association and condominium owners from interfering with plaintiffs' development plans. A party who seeks equitable relief "must come to the court with clean hands," Savage v. Walker, 2009 VT 8, ¶ 10, 185 Vt. 603, 969 A.2d 121 (mem.), and must do equity to seek equity, Blanchard v. Knights, 121 Vt. 29, 37, 146 A.2d 173, 178 (1958). "The very purpose of equity is to exalt the individual circumstances of a case over law's hard and fast rules." In re Southland Corp., 160 F.3d 1054, 1060 (5th Cir.1998); accord Dring v. McDonnell Douglas Corp., 58 F.3d 1323, 1330 (8th Cir.1995) ("The application of equitable principles is, in essence, relief from the harshness of mechanical rules."); In re Enlarging, Extending, & Defining Corp. Limits of Brookhaven, 957 So.2d 382, 385 (Miss.2007) (en banc) ("The glory of equity does not rest on bright-line tests but rather on a Solomon-like dedication to fairness."). We must refrain from applying a hard-and-fast rule that leads to inequitable consequences and instead contemplate the equities underlying this case. The balance here clearly weighs in favor of enforcement of the deed provisions. Developer has come into equity with unclean hands and should be denied relief on that basis. The majority's position that there is "no principled way to allow the deeds to trump the declaration in this case without allowing it in all cases," ante ¶ 21, ignores the basic principles on which equity jurisdiction is built.
¶ 36. While I disagree with the majority's holding, assuming an irreconcilable conflict between the declarations and the deeds, my main point is that there is no irreconcilable conflict and we do not have to decide the case as if there were. With that point in mind, I return to how this Court should interpret provisions in two related documents that are allegedly inconsistent. As the majority recognizes, ante, ¶ 12, our overriding goal is to implement the intent of the contracting parties. See R & G Props., Inc. v. Column Fin., Inc., 2008 VT 113, ¶ 17, 184 Vt. 494, 968 A.2d 286. When multiple related documents are entered into as part of the same transaction, as is the case here, they should be harmonized. See Perlbinder v. Bd. of Managers, 65 A.D.3d 985, 886 *1131 N.Y.S.2d 378, 381 (2009) ("[A]greements executed at substantially the same time and related to the same subject matter are regarded as contemporaneous writings and must be read together as one." (quotation omitted)); Harrington v. Blackston, 319 S.C. 1, 459 S.E.2d 309, 311 (App.1995) ("[The condominium] master deed and allied documents ... must be read together, in relation to each other and harmonized, if possible."), vacated due to settlement, 322 S.C. 470, 473 S.E.2d 47 (1996); see generally Restatement (Second) of Contracts § 202(2) (1981) ("[A]ll writings that are part of the same transaction are interpreted together."). In harmonizing the documents, we must construe terms, if necessary, against the drafterin this case, developers. See, e.g., RLS Assocs., LLC v. United Bank of Kuwait PLC, 380 F.3d 704, 712 (2d Cir.2004) ("Ambiguities are generally interpreted against the drafter."); Walker v. 90 Fairlie Condo. Ass'n, 290 Ga.App. 171, 659 S.E.2d 412, 416 (2008) ("Ambiguities in the declaration must be construed against the drafter."). Further, if the term in the deed is inconsistent with the condominium declaration, the term in the deed is unlawful, as it violates 27 V.S.A. § 1312(5), which provides that "[a]ny further details" set forth in the deed must be "consistent with the declaration."
¶ 37. The latter point is the critical one here. Under the majority's rationale, developers had one of two possible intents in drafting the condominium declaration and the deeds. The first is that the ten-year limitation in the deeds was intended to control. The second is that the declaration was intended to control over the deed language. The difficulty with the second possibility is that insertion of contrary, legally ineffective, language in a deedlanguage that ostensibly creates an important right in the granteecan be viewed as nothing other than consumer fraud in this context. See 9 V.S.A. § 2453(a) (prohibiting "unfair or deceptive acts or practices in commerce" under Vermont's Consumer Fraud Act). If developers intended the declaration to control, then the deed language does not in any sense implement the intent of developers. Its only purpose could be to mislead the grantee into believing that he or she had acquired a right, when the right was nullified at the exact moment that it was created. It only adds to the sense of injustice that the unit owner relies upon an explicit, specific, and short statement in the owner's deed, while developers rely upon a general statement buried in a sixteen-page, single-spaced declaration document. See Berman v. Gurwicz, 178 N.J.Super. 611, 429 A.2d 1084, 1088-89 (Ch.Div.1981) (questioning whether plaintiff condominium purchasers can be bound by provisions in "complex and voluminous" documents that conflicted with other representations made by sellers). We should therefore be very reluctant to interpret the documents as implementing an intent that expressly negates the deed language.
¶ 38. As noted above, however, we must first attempt to construe the declaration and deed together harmoniously, if possible. If the documents can be read together, then the task of determining which document trumps the other is unnecessary. I believe the condominium documents can be harmonized. The deed provision contains a time limit. The declaration language lacks an explicit time limit, but it does not provide that the grantee's power of attorney is effective indefinitelythe majority's construction of the language. If the two provisions were contained in the same document, I think we would all agree that the plain meaning would indicate that a time limit exists despite the ambiguous open-ended statement that did not contain a time limit. This would be a straight-forward application of the maxim that specific *1132 language is intended to control over any implication that can be drawn from more broad and general language. See Fairchild Square Co. v. Green Mountain Bagel Bakery, Inc., 163 Vt. 433, 439, 658 A.2d 31, 35 (1995) ("As a matter of contract construction, the specific controls the general."). The issue, then, is how we treat language contained in interconnected documents that must be read harmoniously.
¶ 39. I think that in the context of this case our approach to the contract construction question is fundamentally the same. The documents here are not only interrelated, but they came into legal force at exactly the same time, involved the same parties, and were part of the same transaction. In such an instance, they should be "treated as one instrument and construed together." Wing v. Cooper, 37 Vt. 169, 178 (1864); accord Gallagher v. Lenart, 226 Ill.2d 208, 314 Ill.Dec. 133, 874 N.E.2d 43, 58 (2007) (noting the "long-standing principle that instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction are regarded as one contract and will be construed together"); Hilltop Cmty. Sports Ctr., Inc. v. Hoffman, 2000 ME 130, ¶ 16, 755 A.2d 1058 (same). Treating the two documents as part of one contract, I would harmonize them by giving effect to the specific time-limit in the deed over the general implication from the declaration that no time limit exists.
¶ 40. A very similar contract construction issue arose in Morrison v. Marsh & McLennan Cos., 439 F.3d 295, 301-02 (6th Cir.2006), when the plaintiff's husband applied for life insurance benefits through his employer and died before a dispute over his eligibility was resolved. The two relevant documents describing the life insurance plan were the plan certificate that contained no time limit in which to contest an eligibility denial and the employer's handbook that contained a three-year limitation period. The court applied the limitation period, noting that it had to construe the documents together when there was no conflict between them. Id. It reasoned that there was no conflict because "the Plan documents are merely silent on the limitations issue." Id. at 302; see also Kearney v. Kirkland, 279 Ill. 516, 117 N.E. 100, 103-04 (1917) (enforcing time limitation contained in deed even though plat did not indicate a limitation). For the exact same reason, there is no conflict here, and the documents can be harmonized.
¶ 41. The majority's answer here is that the sky would fall if the provisions were harmonized, essentially the same answer as to the difference in circumstances between this case and the decisions to which it compares. This reaction is premised on the view that the conflicts are "obvious and irreconcilable" and that harmonizing the documents would "open[] up the possibility that every declaration can be unilaterally amended by deed." Ante, ¶ 18. As Morrison holds, there is no obvious and irreconcilable conflict merely because the meaning ascribed to the declaration is implied and not explicit. The fear that every declaration would be at risk of being trumped by deed language if this dissent's position were adopted is a gross exaggeration.
¶ 42. In addition, another part of the condominium declaration language supports this construction. Developers attempted to create the right to dilute the unit owners' common-area interest in two ways. One way was to create the involuntary powers of attorney at the center of this case. The second way was to create the explicit power to dilute the unit owner's common-area interest, irrespective of the power of attorney, via the declaration: "[d]eclarant expressly reserves to itself, its *1133 successors and assigns, the right to amend this Declaration from time to time so that the Interim and/or Final Percentage Interest of a Unit Owner may be adjusted to reflect the additional Units." Developers do not rely on this language in this case because the unilateral power to adjust the unit owners' percentage interest in the common area is plainly unlawful under 27 V.S.A. § 1306(a)-(b). Indeed, the power-of-attorney method for diluting the owners' common-area interest was clearly intended as a work-around to evade the prohibition of § 1306(b).
¶ 43. What is important to the contract construction issue before us is that developers added a clause applicable only to the direct method of adjusting the common-area interests"which reservation is an express condition of ownership of Units in the condominium and is senior to the conveyance and/or mortgage of such units." (Emphasis added.) That language immediately precedes the language upon which the majority relies, but is applicable only to the direct amendment method for adjusting the percentage interests in the common area. It does not apply to the power-of-attorney method. Thus, in context, and especially due to its placement in relation to the power-of-attorney language, this statement is an indication that developers did not intend the same effect for the power-of-attorney language in the declaration and that the declaration's power-of-attorney language could be harmonized with the deed language.
¶ 44. The majority has argued that two additional reasons support its conclusion that the ten-year limit on the power of attorney is ineffective. The first is that the declaration explicitly provides for the phasing of the development. Ante, ¶ 15. The phasing of the development is, of course, the circumstance that required the provision for the powers of attorney in the first instance. The issue before us is not whether the condominium development could be phased, however, but whether the powers of attorney that allow for additions to the condominium that dilute common-area-ownership rights without consent of the owners have a durational limit. A holding that the powers of attorney have durational limits is perfectly consistent with the phasing rights of developers.
¶ 45. I have a similar response to the 1988 amendments to the declaration.[16] They provide for a final date of June 30, 2005, after which "no additional land, Buildings, Units or Common Areas and Facilities" could be made subject to the declaration. The majority argues that this overall development cutoff shows that the powers of attorney were intended to last to that date.
¶ 46. As the majority points out, there were deeds granted between the adoption of the original declaration and the amended declaration, see ante, ¶ 17, and they cannot be construed with respect to a later amendment. Thus, we must confront the contract construction question under the 1985 declaration. Even if the 1988 declaration controls, and of course it does with respect to deeds granted after its effective date, the addition of the final development date does not control the contract construction issue. The dispute in this case is not over whether developers can add to the condominium project, but instead whether the powers of attorney have a durational limit and developers must obtain consent under § 1306(b) to dilute the common-area interests after the limit expires. It is possible that the durational limit could expire for some owners and *1134 that developers could obtain consent from those owners to proceed. In such a circumstance, it is appropriate to set an overall limit on developers' development rights, beyond which developers cannot proceed, even under the powers of attorney and the additional consents. For this purpose, many condominium statutes require that condominium declarations contain overall time limits for development. See generally 1A P. Rohan & M. Reskin, Condominium Law and Practice ¶ 54.04[5], at 54-21 (2008).
¶ 47. For the above reasons, I would hold that the language of the condominium declaration and the deeds can be harmonized. I would hold that when they are harmonized the ten-year limit on the power of attorney applies.
¶ 48. There is one final reason to reach the result that the deed provisions control. The owners' most compelling argument is that the intent of the parties should not be thwarted by a technical error in drafting the documents. This argument starts with the premise that we should assume a benign developer's intentthat is, to allow a ten-year limit on the deemed powers of attorneyand that the deficiency was in drafting the relevant documents to implement that intent. These circumstances describe a classic case of a waiver. Waiver is an intentional relinquishment of a known right, and it can arise from conduct as well as from expressed words. Lynda Lee Fashions, Inc. v. Sharp Offset Printing, Inc., 134 Vt. 167, 170, 352 A.2d 676, 677 (1976). The record demonstrates that developers were aware of their rights as implemented through the declaration to build the condominium units in phases, but chose to limit those rights to proceed without consent to the time limit expressed in the deed. Waivers of condominium declaration rights have been enforced in other condominium litigation, and there is no reason they should not be enforced here. See, e.g., Hoover & Morris Dev. Co. v. Mayfield, 233 Ga. 593, 212 S.E.2d 778, 781 (1975) ("The requirements of declarations..., although requiring strict compliance, may nevertheless be waived."); Janasik v. Fairway Oaks Villas Horizontal Prop. Regime, 307 S.C. 339, 415 S.E.2d 384, 388 (1992) (concluding that condominium and management company waived rights under declaration and bylaws).
¶ 49. If we are unwilling to enforce a waiver in this case, we are endorsing conduct that is outside the "spirit of fairness, justness, and right dealing." Starr Farm Beach Campowners Ass'n, Inc. v. Boylan, 174 Vt. 503, 507, 811 A.2d 155, 160 (2002) (mem.) (quotation omitted). In this respect, I concur with Justice Mahady's sentiment, expressed roughly twenty years ago, that "[t]he law should be more solicitous of ... innocent consumers than of the tortfeasor-developer." Meadowbrook Condo. Ass'n v. S. Burlington Realty Corp., 152 Vt. 16, 29, 565 A.2d 238, 245 (1989) (Mahady, J., concurring and dissenting). For the foregoing reasons, I respectfully dissent.
¶ 50. I am authorized to state that Judge JOSEPH joins this dissent.
NOTES
[1] Though this statute was amended in 1998 to add 27A V.S.A. § 1-104, unless otherwise indicated, we refer throughout this opinion to the statute in effect at the time the 1985 declaration was filed.
[2] In connection with the foreclosure action, the Association (made up of condominium unit owners of the Woods) filed an action, claiming that a portion of the development known as Terra Median was not a commercial condominium, but was part of the common areas and facilities of the Woods. All parties reached a settlement, which was incorporated into a final order and decree of foreclosure. The decree of foreclosure included the following: (1) a determination that Terra Median was a commercial condominium validly established and not part of the common areas and facilities of the Woods; (2) a determination that Probos (the successor to the original developer) was owner of Terra Median; and (3) a definition of what was included in the commercial unit of Terra Median. Probos then became the sole owner of all rights formerly owned by the original developer. Thereafter, the Association was granted a deed to Terra Median.
[3] The court also addressed whether the developers could amend the Act 250 permit without having the Association join as a co-applicant. The court noted that the Environmental Board (now the Environmental Court) has jurisdiction to make this determination. The court concluded, however, that because this determination relates to interpretation of the declaration, the language of the declaration gave the declarant the power to amend existing state and local land permits "to further development plans within the scope of the Declaration, without having to first obtain consent to file such application from unit owners." The court also noted that the declarant's rights in this respect were limited and that the right of the declarant to amend its Act 250 permit to further development explicitly contemplated by the original declaration "does not diminish any rights that the Association, as a unit owner itself and as representative of the other unit owners, may have for participation under Act 250 rules." Under Environmental Board Rule 10(A) (now Act 250 Rule 10(A)), "[t]he record owners(s) of the tract(s) of involved land shall be the applicant(s) or co-applicant(s) unless good cause is shown to support waiver of this requirement." See, e.g., In re Quechee Lakes Corp., 154 Vt. 543, 548-49, 580 A.2d 957, 960-61 (1990) (affirming Environmental Board's decision that condominium unit owners' association had demonstrated good cause to waive requirement that individual unit owners be joined as co-applicants in Act 250 permit application). Rule 10(A) also empowers the district commission to require those with a substantial interest in the involved land to become co-applicants on a finding that the property interest "is of such significance that the application cannot be accepted . . . without their participation." See, e.g., In re Pilgrim P'ship, 153 Vt. 594, 597, 572 A.2d 909, 911 (1990) (affirming Environmental Board's holding that a landowner's neighbor was a necessary co-applicant on a revised Act 250 permit application).

We do not rule on whether the Association is a necessary party to the Act 250 amendment proceeding, as this issue was not briefed by either party and is not within the narrow scope of the interlocutory appeal before us. See Baker v. Town of Goshen, 169 Vt. 145, 152, 730 A.2d 592, 597 (1999) (refusing to issue advisory opinion on landowners' appeal of zoning permit where issue on appeal was not decided below). We agree with the trial court that it is the role of the district commission to decide in the first instance whether the Association is a necessary co-applicant for purposes of the Act 250 permit amendment. Here, the district commission denied developers' application amendment, finding that developers had not demonstrated they had the right to develop the Woods because the conflicting provisions in the declaration, deeds, and two separately executed powers of attorney raised a question as to "whether the Declaration, as it is now in force, permits the Permittee to proceed with the final phase of the Project." The commission rejected a 1996 title policy proffered by developers to demonstrate their right to continue development, concluding that the policy was stale and too remote in time from the present. As the commission recognized, developers could have cured the problem if the current fee owners of the property had been willing to endorse the project as co-applicants; however, in light of the dispute between them, this solution was not available. Thus, the commission's denial reached no substantive rights of the parties, either on the proposed amendments or on the co-applicant rule. If developers wish to proceed with the project, they must return to the district commission and renew their application unprejudiced by the previous denial.
[4] We note that this situation differs from a developer's unilateral attempt to substantially alter a development project through amendment to a land use permit or declaration. See In re Stowe Highlands Resort PUD to PRD Application, 2009 VT 76, ¶ 10, 186 Vt. 568, 980 A.2d 233 (mem.) (concluding that developer did not have authority to apply unilaterally for zoning permit amendment to convert project from a resort planned unit development to a planned residential development because developer had not demonstrated that it had authority over the entire parcel necessary to make such fundamental changes to the project). Instead, developers here soughtand were grantedprior consent only to continue with the phased development plan set forth in the original declaration and to allow for the changed percentage interest in common areas that would necessarily flow from any additions to the project.
[5] In addition, the declaration reserved numerous rights to the original developer, including: the power to amend the declaration to reflect adjustments in the percentage interest of each unit owners when additional units are built; the right to amend the declaration "to comply with other provisions of this Declaration, or as may be required in connection with ... the clarification of any provision hereof, the remedy of any inconsistency between any provision hereof and another provision"; the right to easements over the common areas; the right to alter the common areas; the right to determine the degree of maintenance to be devoted to the property; and the right to amend state and local land use and development permits for the project. The declaration went on to state that the foregoing reservations "have been established and reserved prior to and exclusive of the rights of any Unit owner."
[6] As a result of protracted litigation, this amendment has not yet been filed.
[7] Thus, the unit owners had constructive noticethrough various declaration provisionsboth that the Woods would be subject to future development and that the owners' percentage interest in the common areas would change as each new unit was added. We also note that the consented-to declaration amendment does no more than update the unit owners' percentage interest in the common areas and facilities to reflect contemplated development of the project and does not implicate other substantive rights of unit owners or substantially change the phased development plan set forth in the original declaration.
[8] The dissent characterizes the conflict as "nothing other than consumer fraud in this context." Post, ¶ 37. There is no fraud or consumer fraud claim before us, and we cannot reframe the complaint at this stage.
[9] See 27A V.S.A. § 1-104 (effectively prohibiting a developer from obtaining prior consent to alter unit owners' undivided interests in common areas by providing that "provisions of this title may not be varied by agreement" and expressly prohibiting a declarant from "act[ing] under a power of attorney or us[ing] any other device to evade the limitations or prohibitions of this title or the declaration").
[10] Because we find in favor of developers, we decline to reach developers' claim that the Association is precluded from challenging developers' right to develop the Woods because of the doctrine of res judicata.
[11] The deeds contain further reference to the declaration, stating that "the premises are also subject to and benefited by certain rights of way, easements, covenants, exceptions and reservations specified in the Declaration."
[12] The promises were initially made by the original developer, developers' predecessor in interest. Under Vermont law, a predecessor's covenants generally run with the land provided that certain requirements are satisfied, as is the case here. See Gardner v. Jefferys, 2005 VT 56, ¶ 6, 178 Vt. 594, 878 A.2d 259(mem.) (describing necessary conditions for restrictive covenant to run with land). Developers, therefore, stand in the shoes of the original developer and are responsible for covenants made by the original developer at the time of the purchase.
[13] I use the term "deed" to mean both the deeds provided to unit owners and the powers of attorney given by the first two purchasers. The circumstances with respect to each are the same.
[14] Like the majority, I refer throughout this opinion to the statutes in effect at the time the 1985 declaration was filed.
[15] It is a stretch to describe the phasing and power of attorney provisions on which developers rely as "details" or as provisions consistent with the Act, but I will assume that developers could put these provisions in the declaration because there is no prohibition on adding additional provisions.
[16] The amendment, which is a restatement of the declaration, contains the same language as the original declaration with respect to powers of attorney.