NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL AND
MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

RICHARD MOUNTZ and TATIANA MOUNTZ, husband and wife;
JAMES ROGERS and KELSEY ROGERS, husband and wife; CRAIG
NELSON and CINDY NELSON, husband and wife; WILLIAM HESS and
THERESA HESS, husband and wife; CHRIS KRZEMINSKI and
MICHELLE KRZEMINSKI, husband and wife, *Plaintiffs/Appellees*,

*v.*

MOUNTAIN GATE PROPERTY OWNERS ASSOCIATION, INC., an
Arizona non-profit corporation, *Defendant/Appellant.*

No. 1 CA-CV 21-0656
FILED 11-10-2022

Appeal from the Superior Court in Navajo County
No. S0900CV202000470
The Honorable Jon H. Saline, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Jones Skelton & Hochuli PLC, Phoenix
By Ryan J. McCarthy, Jonathan P. Barnes, Jr., David C. Onuschak
*Counsel for Defendant/Appellant*

Degnan Law Esq., Phoenix
By David Degnan, Mark W. Horne, Justin Fouts
*Counsel for Plaintiffs/Appellees*

Carpenter Hazlewood Delgado & Bolen LLP, Tempe
By Scott B. Carpenter, Alexis G. Firehawk, Greg A. Stein
*Counsel for Amicus Curiae, Community Associations Institute*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge James B. Morse Jr. joined.

---

**B R O W N**, Judge:

¶1 Mountain Gate Property Owners Association ("the Association") adopted an amendment ("Amendment") to its Declaration of Covenants, Conditions and Restrictions ("CC&Rs"), imposing restrictions on short-term property leases. Several lot owners ("Owners") sued the Association, seeking in part a declaratory judgment that the Amendment was unenforceable. Following an evidentiary hearing, the superior court ruled in favor of Owners. The Association appeals from that ruling. For reasons that follow, we affirm.

**BACKGROUND**

¶2 Mountain Gate is a planned community in the Town of Pinetop-Lakeside, consisting of 117 lots that are each subject to the CC&Rs, which authorize amendments if approved by at least half of the lot owners. After receiving complaints about short-term leases, the Association's Board of Directors ("the Board") sent a letter to each lot owner asking for approval of the Amendment. The letter indicated that owners could approve the Amendment by signing and returning an attached consent form. At the subsequent annual meeting, the Board's vice president announced that the Amendment passed. The recorded document bore the notarized signature of the Association's vice-president, who certified that the Amendment was adopted by at least 50% of the lot owners.

¶3 Owners then filed their lawsuit, which included claims for breach of duty, breach of the duty of good faith and fair dealing, and breach of contract, as well as declaratory and injunctive relief. After discovery, briefing, and an evidentiary hearing, the superior court declared the Amendment invalid because it was not *executed* by at least half of the owners. The court also found it was not reasonably foreseeable that a majority of the property owners could amend the CC&Rs to "impose

2

restrictions on leasing of lots." The court therefore enjoined the Association from enforcing the Amendment. Because other matters were still pending in the case, the court declined to rule on the issue of attorneys' fees. The Association timely appealed, and we have jurisdiction under A.R.S. § 12-2101(A)(5)(b).

## DISCUSSION

¶4 We review the grant or denial of a preliminary injunction for an abuse of discretion, deferring to the superior court's factual findings unless they are clearly erroneous. *IB Property Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship.*, 228 Ariz. 61, 64, ¶ 5 (App. 2011). We will affirm the court's ruling for any reason supported by the record. *See Sycamore Hills Ests. Homeowners Ass'n, Inc. v. Zablotny*, 250 Ariz. 479, 485, ¶ 20 (App. 2021).

¶5 A restrictive covenant is a contract, and we review its interpretation de novo. *Powell v. Washburn*, 211 Ariz. 553, 555, ¶ 8 (2006); *see also Dreamland Villa Cmty. Club, Inc. v. Rainey*, 224 Ariz. 42, 46, ¶ 17 (App. 2010). Restrictive covenants "should be interpreted to give effect to the intention of the parties." *Powell*, 211 Ariz. at 557, ¶ 13. We look to the "language used in the instrument, . . . the circumstances surrounding the creation of the [instrument], and . . . the purpose for which it was created." *Id.* (quoting Restatement (Third) of Property (Servitudes) § 4.1(1) (2000)).

¶6 The Association argues the CC&Rs did not require the approving owners to personally sign the Amendment. Instead, the Association contends that the CC&Rs authorized a Board member to certify the adoption and execute the Amendment. According to the Association, when the approving owners signed and returned their consent forms, they gave the Board actual authority to execute the Amendment on their behalf.

¶7 Under Section 11(E), the CC&Rs authorize an amendment "by Instrument *executed* by the [o]wners of at least fifty percent (50%) of the Lots . . . and such amendment shall not be effective until the recording of such Instrument." (Emphasis added.) Restrictive covenants are contracts. *Powell*, 211 Ariz. at 555, ¶ 8. When we interpret them, as with any contract, we strive to give words their ordinary, common-sense meaning to carry out the parties' intent. *Prieve v. Flying Diamond Airpark, LLC*, 252 Ariz. 195, 198, ¶ 8 (App. 2021). Enforcing the intent of the parties is the "cardinal principle" for interpretating restrictive covenants. *Powell*, 211 Ariz. at 557, ¶ 14. We will not read a covenant in a way that defeats the plain and obvious meaning of the restriction. *Arizona Biltmore Ests. Ass'n v. Tezak*, 177 Ariz. 447, 449 (App. 1993).

¶8             The CC&Rs do not define "execute," but the term generally means "[t]o perform or complete (a contract or duty)," "[t]o make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form." *Execute*, Black's Law Dictionary (11th ed. 2019). Under the ordinary, common-sense meaning of the word "execute," each approving owner needed to sign the "Instrument" and it would not become effective until recorded.

¶9             The "Instrument" here is the Amendment, and it was executed by only one lot owner, a Board member. The plain language of Section 11(E) does not authorize one individual to amend the CC&Rs by "written consent," or to certify that an amendment was "adopted by" a majority of homeowners. Instead, under Section 11(E) the Amendment itself needed to be *executed* by at least half of the lot owners. Because it was not done in this manner, the Amendment is invalid. *See Multari v. Gress*, 214 Ariz. 557, 559-60, ¶¶ 15-19 (App. 2007) (finding an amendment altering the original declaration was invalid for lack of compliance with the "exclusive amendment procedure"); *La Esperanza Townhome Ass'n, Inc. v. Title Sec. Agency of Ariz.*, 142 Ariz. 235, 239-40 (App. 1984) (concluding that amendments to restrictions that are not properly executed never become effective).

¶10           Although the Association acknowledges that various sources similarly define "execute" to mean the performance or action of making a legal document valid by signing, it broadly reads those definitions to allow the execution of a document through an agent. But the Association cites no authority supporting its argument that agency principles may trump the plain language of a restrictive covenant. Section 11(E)'s requirements for amending the CC&Rs are unambiguous, and we will not add provisions that were not originally included because doing so would defeat the intent of the amendment provision. *See Powell*, 211 Ariz. at 557-58, ¶¶ 14, 20. Indeed, when originally adopted, the CC&Rs were "executed" by the Declarant's agent, who attested, "IN WITNESS WHEREOF, Mountain Gate Development LLC, an Arizona Limited Liability Company, *has executed* This Declaration of Covenants, Conditions and Restrictions *by the undersigned*." (Emphasis added.) Similarly, the Amendment should have been "executed" by at least 50% of Mountain Gate's approving lot owners.

¶11           Alternatively, the Association relies on A.R.S. § 33-1817(A)(3), which states that "[w]ithin thirty days after the adoption of any amendment pursuant to this section, the association . . . shall prepare, execute and record a written instrument setting forth the amendment." The Association argues that the statute, coupled with its agency argument noted above, authorized

it to "prepare, execute, and record" the Amendment on the owners' behalf. Again, the Association cites no authority suggesting that § 33-1817(A)(3) was meant to override the specific requirements governing amendments found in the CC&Rs. Contracts are read to incorporate *applicable* statutes, but a statute governs only when the contract is incompatible with the statute. *Sch. Dist. No. One of Pima Cnty. v. Hastings*, 106 Ariz. 175, 177 (1970); *Huskie v. Ames Bros. Motor & Supply Co.*, 139 Ariz. 396, 402 (App. 1984). By its express language, § 33-1817(A)(3) applies only to amendments adopted "pursuant to this section," which means the statute is not incorporated into the CC&Rs. Moreover, the Association offers no meaningful explanation why the statute should be read as allowing an agent to perform an obligation—execution of the "Instrument"—specifically given to lot owners under Section 11(E). Accepting the Association's theory would defeat the plain meaning of the CC&Rs. *See Arizona Biltmore Ests. Ass'n*, 177 Ariz. at 449.

**¶12**        Also, nothing in § 33-1817(A)(3) shows that planned communities are precluded from enacting more stringent or more specific requirements for adopting amendments. When the legislature desires to preempt a planned community's restrictive covenants in certain cases, it has done so by using specific language to that effect. *See, e.g.*, A.R.S. § 33-1817(A)(4) (introducing the covered topic with "[n]otwithstanding any provision in the declaration . . . ."). Section 33-1817(A)(3) does not include that language, or anything similar indicating legislative preemption. The superior court did not err in concluding that the Amendment is invalid because it was not executed by the owners. Thus, we need not address whether the court properly held that the Amendment is also invalid because it was not reasonably foreseeable.

## CONCLUSION

**¶13**        We affirm the superior court's order declaring the Amendment invalid based on an ineffective amendment process and enjoining the Association from enforcing it. In our discretion, and because there are unresolved claims in the superior court, we deny the Owners' request for attorneys' fees (under A.R.S. § 12-341.01 and the CC&Rs),

deferring the request to the superior court pending the ultimate resolution of this matter. *See Tierra Ranchos Homeowners Ass'n v. Kitchukov*, 216 Ariz. 195, 204, ¶ 37 (App. 2007). As the successful party on appeal, the Owners are awarded taxable costs subject to appellees' compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA